[Civ. No. 8083. Second Appellate District, Division One.—November 20, 1934.]

GEORGE H. SMITH, as Administrator, etc., Appellant, v. EFREM ZIMBALIST, Respondent.

Bicksler, Smith, Parke & Catlin and Frank D. Catlin, Jr., for Appellant.

Glen Behymer and B. L. Hoyt for Respondent.

HOUSER, J.—From the "findings of fact" made pursuant to the trial of the action, it appears that plaintiff, who was of the age of eighty-six years, although not a dealer in violins, had been a collector of rare violins for many years; "that defendant was a violinist of great prominence, internationally known, and himself the owner and collector of rare and old violins made by the old masters"; that at the suggestion of a third person, and without the knowledge by plaintiff of defendant's intention in the matter, defendant visited plaintiff at the home of the latter and there asked plaintiff if he might see plaintiff's collection of old violins; that in the course of such visit and inspection, "plaintiff showed a part of his collection to defendant; that defendant picked up one violin and asked plaintiff what he would take for the violin, calling it a 'Stradivarius'; that plaintiff did not offer his violins, or any of them, for sale, but on account of his age, after he had been asked what he would take for them, said he would not charge as much as a regular dealer, but that he would sell it for $5,000; that thereafter

defendant picked up another violin, calling it a 'Guarnerius', and asked plaintiff what he would take for that violin, and plaintiff said if defendant took both violins, he could have them for $8,000; that the defendant said 'all right', thereupon stating his financial condition and asking if he could pay $2,000 cash and the balance in monthly payments of $1,000." Thereupon a memorandum was signed by defendant as follows:

"I hereby acknowledge receipt of one violin by Joseph Guarnerius and one violin by Stradivarius dated 1717 purchased by me from George Smith for the total sum of Eight Thousand Dollars toward which purchase price I have paid Two Thousand Dollars the balance I agree to pay at the rate of one thousand dollars on the fifteenth day of each month until paid in full."

In addition thereto, a "bill of sale" in the following language was signed by plaintiff:

"This certifies that I have on this date sold to Mr. Efrem Zimbalist one Joseph Guarnerius violin and one Stradivarius violin dated 1717, for the full price of $8,000.00 on which has been paid $2,000.00.

"The balance of $6,000.00 to be paid $1,000.00 fifteenth of each month until paid in full. I agree that Mr. Zimbalist shall have the right to exchange these for any others in my collection should he so desire."

That at the time said transaction was consummated each of the parties thereto "fully believed that said violins were made one by Antonius Stradivarius and one by Josef Guarnerius"; that preceding the closing of said transaction "plaintiff made no representations and warranties as to said violins, or either of them, as to who their makers were, but believed them to have been made one by Antonius Stradivarius and one by Josef Guarnerius in the early part of the eighteenth century; that plaintiff did not fraudulently make any representations or warranties to defendant at the time of said purchase"; that there was "a preponderance of evidence to the effect that said violins are not Stradivarius or Guarnerius violins, nor made by either Antonius Stradivarius or Josef Guarnerius, but were in fact made as imitations thereof, and were not worth more than $300.00".

The action which is the foundation of the instant appeal was brought by plaintiff against defendant to recover judgment for the unpaid balance of the purchase price of the two violins.

As is shown by the conclusions of law reached by the trial court from such facts, the theory upon which the case was decided was that the transaction in question was the result of "a mutual mistake on the part of plaintiff and defendant", and consequently that plaintiff was not entitled to recover judgment. From a judgment rendered in favor of defendant, plaintiff has appealed to this court.

In urging a reversal of the judgment, it is the contention of appellant that the doctrine of *caveat emptor* should have been applied to the facts in the case; that is to say, that in the circumstances shown by the evidence and reflected in the findings of fact, the trial court should have held that defendant bought the violins at his own risk and peril.

The substance of the argument presented by appellant is a recast of the decision at *nisi prius* in the case of *Jendwine* v. *Slade*, (1797) 2 Espinasse, 572. The syllabus in that case is as follows:

"The putting down the name of an artist in a catalogue as the painter of any picture, is not such a warranty as will subject the party selling to an action, if it turns out that he might be mistaken, and that it was not the work of the artist to whom it was attributed."

It there appears that therein (as similarly in the instant case) "several of the most eminent artists and picture dealers were called, who differed in their opinions respecting the originality of the pictures".

Lord Kenyon (the *nisi prius* judge) said: "It was impossible to make this the case of a warranty; the pictures were the work of artists some centuries back, and there being no way of tracing the picture itself, it could only be matter of opinion whether the picture in question was the work of the artist whose name it bore, or not. What then does the catalogue import? That, in the opinion of the seller, the picture is the work of the artist whose name he has affixed to it. The action in its present shape must go on the ground of some fraud in the sale. But if the seller only represents what he himself believes, he can be guilty of no fraud. The

catalogue of the pictures in question leaves the determination to the judgment of the buyer, who is to exercise that judgment in the purchase. . . . ''

In the case of *Chandelor* v. *Lopus,* (1603) 2 Cr. Rep. 4, 79 English Rep. 3 (Full Reprint), which in the state of New York for many years was relied upon as the leading authority in situations similar to that present herein, it was held that where one sold a jewel as a bezoar stone which in truth it was not, no action would lie, unless in the complaint or declaration it was alleged that the seller knew that it was not a bezoar stone, or that he warranted the stone to be such.

In *Seixas* v. *Woods,* (1804) 2 Caines (N. Y.), 48 [2 Am. Dec. 215] (Chancellor Kent writing a concurring opinion), a sale of wood which both parties to the transaction supposed was brazilletto, when in fact it was peachum,—in the absence of express warranty by the seller, was held binding on the buyer. It was also ruled that ''mentioning the wood as brazilletto wood in the bill of parcels and in the advertisement some days previous to the sale, did not amount to a warranty to the plaintiffs''.

In the case of *Swett* v. *Colgate,* (1822) 20 Johns. (N. Y.) 196 [11 Am. Dec. 266], it was held that where one, without express warranty, sold what he supposed was barilla, which he advertised as barilla, which he invoiced as barilla, and which prior to the sale thereof the purchaser examined ''several times'', but which after the sale was found to be kelp, the rule of *caveat emptor,* as announced in *Chandelor* v. *Lopus, supra,* would apply. And so in *Welsh* v. *Carter,* (1828) 1 Wend. (N. Y.) 185 [19 Am. Dec. 473], which likewise involved the sale of an article known as barilla, but which in fact was a fraudulent imitation of it and entirely worthless, the contract was held binding on the purchaser who, before the sale, was told that he ''must judge for himself'', and who had a sample of the ''barilla'' analyzed.

But with reference to the first cited case (*Seixas* v. *Woods, supra,* in which Chancellor Kent wrote a concurring opinion), in 2 Kent's Commentaries, section 479, in part it is said:

''There is no doubt of the existence of the general rule of law, as laid down in *Seixas* v. *Woods;* and the only doubt is whether it was well applied in that case, *where*

*there was a description in writing of the article by the vendor which proved not to be correct, and from which a warranty might have been inferred.* But the rule fitly applies to the case where the article was equally open to the inspection and examination of both parties, and the purchaser relied on his own information and judgment, without requiring any warranty of the quality; . . . ''

Likewise, in 2 Blackstone's Commentaries, *451, the exception to the general rule is there noted as follows: ''But with regard to the goodness of the wares so purchased, the vendor is not bound to answer; unless he expressly warrants them to be sound and good, or unless he knew them to be otherwise, and hath used no art to disguise them, or *unless they turn out to be different from what he represented them to the buyer.''*

In *Hart* v. *Wright,* (1837) 17 Wend. (N. Y.) 267, in commenting on the rule applied in *Seixas* v. *Woods, supra,* it is said:

''These cases have not been overruled, and their principles have not been seriously questioned anywhere. It has been doubted whether those which deny a warranty to be implied by description in a sale note, bill of parcels, &c., were not a wrong application of the common law rule (2 Kent's Comm., 479, 3d ed.); and they have been severely criticized and generally repudiated in our sister states, whose courts hold, with the English cases, *that such a description is a warranty of kind and quality,* as far as it goes (*Yates* v. *Pym,* 6 Taunt. 446; 2 Marsh. 141, S. C.; *Shepherd* v. *Kain,* 5 Barn. & Ald. 240; *Gardiner* v. *Grey,* 4 Campb., 144, as explained [*Hastings* v. *Lovering*], 2 Pick. (Mass.) 219, 220; *Bridge* v. *Wain,* 1 Stark. R. 504; *Rowe* v. *Osborne,* 1 Stark. R. 140; *Prosser* v. *Hooper,* 1 Moore, 106; *Osgood* v. *Lewis,* 2 Harr. & Gill, (Md.) 495, 522 to 527 [18 Am. Dec. 317]; *Hastings* v. *Lovering,* 2 Pick. (Mass.) 214, 220 [13 Am. Dec. 420]; *Borrekins* v. *Bevan,* 3 Serg. & Rawle, (Pa.) 23 [23 Am. Dec. 85]; *contra,* see *Jendwine* v. *Slade,* 2 Esp. R. 572; *Conner* v. *Henderson,* 15 Mass. 319 [8 Am. Dec. 103], and see *Henderson* v. *Sevey,* 2 Greenl. (2 Me.) 139).''

In *Hawkins* v. *Pemberton,* (1872) 51 N. Y. 198 [10 Am. Rep. 595], where a sale by auction had been made of what was assumed to be ''blue vitriol'', but which in fact was ''mixed vitriol'', after an extensive review of

the authorities it was held that the contract was unenforceable. And in the same case, in referring to the case of *Chandelor* v. *Lopus,* (1603) 2 Cr. Jac. 4, 79 English Rep. 3 (Full Reprint), upon the decision of which many of the former cases relied as an authority, in part the court said: "The doctrine (there) laid down is that a mere affirmation or representation as to the character or quality of goods sold will not constitute a warranty; *and that doctrine has long since been exploded and the case itself is no longer regarded as good law in this country or England."* (Citing authorities.) To the same effect, see *Dounce* v. *Dow,* 64 N. Y. 411; *White* v. *Miller,* 71 N. Y. 118 [27 Am. Rep. 13].

A case which in its facts closely resembles those in the instant case is that of *Power* v. *Barham,* (1836) 4 Ad. & E., 473, 111 English Repts., Full Reprint, (K. B.) 865. Therein the early case of *Jendwine* v. *Slade,* 2 Espinasse, 572 (1797), to which reference hereinbefore has been had, is cited and "distinguished". The syllabus in *Power* v. *Barham, supra,* is as follows: "In *assumpsit* for breach of a warranty of pictures, it was proved, among other things, that the defendant, at the time of the sale, gave the following bill of parcels: 'Four pictures, Views in Venice, Canaletto, 1601'. The Judge left it to the jury upon this and the rest of the evidence, whether the defendant had contracted that the pictures were those of the artist named, or whether his name had been used merely as matter of description, or intimation of opinion, the jury found for the plaintiff, saying that the bill of parcels amounted to a warranty: Held, that the question had been rightly left to jury, and that the verdict was not to be disturbed."

An American case which in principle is clearly applicable to the facts herein is that of *Sherwood* v. *Walker,* 66 Mich. 568 [33 N. W. 919, 11 Am. St. Rep. 531]. It there appears that the subject of the sale was a "blooded" polled Angus cow that both parties to the transaction assumed was barren and hence useless as breeding stock. In such assumed conditions the owner agreed to sell and the purchaser agreed to buy the cow at the market price of beef cattle, to wit, five and one-half cents per pound, or what amounted to about $80. Before the day arrived when the cow was to be delivered by the seller to the purchaser, it was discovered that the cow was with calf and consequently

that the cow was worth at least $750. It was held that the owner of the cow had the right to rescind the agreement of sale. But to the contrary of such ruling on practically similar facts, see *Wood* v. *Boynton*, 64 Wis. 265 [25 N. W. 42, 54 Am. Rep. 610].

In the case of *Henshaw* v. *Robins*, 9 Met. (50 Mass.) 83 [43 Am. Dec. 367], where the authorities are reviewed, the facts and the law are indicated in the syllabus as follows: "When a bill of parcels is given, upon a sale of goods, describing the goods, or designating them by a name well understood, such bill is to be considered as a warranty that the goods sold are what they are thus described or designated to be. And this rule applies, though the goods are examined by the purchaser, at or before the sale, if they are so prepared, and present such an appearance, as to deceive skilful dealers.''

. Reflecting particularly upon the situation shown by the facts in the instant case, is the following language which occurs in the course of the opinion: "But we are of opinion that the examination of the article by the plaintiff, at the time of the sale, is no evidence of his intention to waive any legal right. *If the spurious nature of the article might have been detected on inspection, it might have been otherwise;* but we must infer, from the instruction of the court, that the jury found that the article was so disguised that the deception could not have been detected by a skilful dealer in indigo, without resorting to an analytical experiment; so that no neglect can be imputed to the plaintiff in not making a careful examination." (See, also, *Hecht* v. *Batcheller*, 147 Mass. 335 [17 N. E. 651, 9 Am. St. Rep. 708].)

On examination of the case of *Henshaw* v. *Robins, supra,* the similarity of the facts therein to the facts in the instant case will immediately be noted, and the language of the opinion to the effect that if "the article was so disguised that the deception could not have been detected by a skilful dealer" so closely applies to the situation in the instant case, that the conclusion reached by the court in the cited case is particularly important in reaching a conclusion herein.

The governing principle of law to the effect that an article described in a "bill of parcels", or, as in the instant

case, in a "bill of sale", amounts to a warranty that such article in fact conforms to such description and that the seller is bound by such description, has been applied in this state in the case of *Flint* v. *Lyon*, 4 Cal. 17, wherein it was held that where the defendant purchased an entire cargo of flour which was described as "Haxall" flour, he was not required by the contract to accept the same flour which in reality was "Gallego" flour, but which was of as excellent quality as "Haxall" flour. Therein, in part, the court said:

"What the inducement was to the defendant to purchase Haxall, we know not; but having purchased that particular brand, he was entitled to it, and could not be compelled to accept any other as a substitute. The use of the word 'Haxall' in the sale note amounted to a warranty that the flour was Haxall. (Citing authorities.) How, then, stands the case? The contract was founded in mistake, both parties supposing they were contracting concerning a certain article which had no existence, consequently the contract was void for want of the substance of the thing contracted for. Could then the acceptance of a different article than the one sold by Gorham, the sub-vendee, conclude the defendant? Certainly not! . . . "

In principle, to the same effect, see, also, *Burge* v. *Albany Nurseries, etc.*, 176 Cal. 313 [168 Pac. 343]; *Barrios* v. *Pacific States Trading Co.*, 41 Cal. App. 637 [183 Pac. 236]; *Firth* v. *Richter*, 49 Cal. App. 545 [196 Pac. 277]; *Rauth* v. *Southwest Warehouse Co.*, 158 Cal. 54 [109 Pac. 839]; *Brock* v. *Newmark G. Co.*, 64 Cal. App. 577 [222 Pac. 195]; *Brandenstein* v. *Jackling*, 99 Cal. App. 438 [278 Pac. 880].

Although it may be that by some authorities a different rule may be indicated, it is the opinion of this court that, in accord with the weight of the later authorities to which attention hereinbefore has been directed, the strict rule of *caveat emptor* may not be applied to the facts of the instant case, but that such rule is subject to the exception thereto to the effect that on the purported sale of personal property the parties to the proposed contract are not bound where it appears that in its essence each of them is honestly mistaken or in error with reference to the identity of the subject-matter of such contract. In other

words, in such circumstances, no enforceable sale has taken place. ■ But if it may be said that a sale, with a voidable condition attached, was the outcome of the transaction in the instant case, notwithstanding the "finding of fact" by the trial court that "plaintiff made no representations and warranties as to said violins", from a consideration of the language employed by the parties in each of the documents that was exchanged between them (to which reference hereinbefore has been had), together with the general conduct of the parties, and particularly the acquiescence by plaintiff in the declaration made by defendant regarding each of the violins and by whom it was made, —it becomes apparent that, in law, a warranty was given by plaintiff that one of the violins was a Guarnerius and that the other was a Stradivarius.

The findings of fact unquestionably show that each of the parties believed and assumed that one of said violins was a genuine Guarnerius and that the other was a genuine Stradivarius; the receipt given by defendant to plaintiff for said violins so described them, and the "bill of sale" given by plaintiff to defendant certifies that plaintiff "sold to Mr. Efrem Zimbalist (defendant) one Joseph Guarnerius violin and one Stradivarius violin dated 1717 for the full price of $8,000.00 on which has been paid $2,000.00. . . . "

Without burdening this opinion with the citation of additional authorities, it may suffice to state that, although the very early decisions may hold to a different rule, all the more modern authorities, including many of those in California to which attention has been directed (besides the provision now contained in section 1734, Civ. Code), are agreed that the description in a bill of parcels or salenote of the thing sold amounts to a warranty on the part of the seller that the subject-matter of the sale conforms to such description. (See, generally, 22 Cal. Jur. 994; 55 Cor. Jur. 738 et seq.; 24 R. C. L. 171; and authorities respectively there cited.)

It is ordered that the judgment be and it is affirmed.

Conrey, P. J., and York, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 17, 1935.