[Civ. No. 10674. First Appellate District, Division One.—February 24, 1939.]

DU VAL MOORE & CO. (a Corporation), Appellant, v. IVAN WARD, Respondent.

Jerome Politzer and John E. Truman for Appellant.

Cooley, Crowley & Supple for Respondent.

WARD, J.—Du Val Moore & Co., a corporation, entered into a written agreement with Ivan Ward for the purchase of a quantity of scrap metal referred to as "Babbitt Skimmings". The contract was in the form of a communication from the corporation to Ward, who endorsed thereon "Confirmed & accepted." The agreement provides in part as follows: "Confirming conversation of October 20th, we herewith offer you firm, for acceptance by Saturday noon, October 22nd, $19.25 per ton of 2,000 lbs. for the approximate one hundred to one hundred and twenty-five tons of Southern Pacific Babbitt Skimmings described by you, and of which you have given us an analysis reading as follows:" Thereafter follow analysis No. 1 and analysis No. 2 referring to tin, antimony, copper and lead, and the yield of each analysis. The percentage of each respective metal and the yield in analysis No. 1 differed from the percentage and yield given in analysis No. 2. Analysis No. 1 indicated a less commercial value than No. 2 though the total yield was higher. The

scrap metal was delivered by the seller to the place designated in the agreement. The corporation paid for the number of tons delivered and immediately resold to parties in an eastern state. Upon arrival at the destination it was found that the skimmings contained a less percentage of metal content which resulted in reducing the market value. Du Val Moore & Co. brought this action against defendant Ward on the contract and alleged damages in the sum of $2,033.27. Judgment was entered for the defendant, and plaintiff appealed.

The question presented on appeal is, did the written agreement create a warranty? The trial court held that it did not and, for the purpose of ascertaining the intention of the parties, permitted testimony of prior conversations to show the circumstances under which certain words and figures were used. In a supplement to appellant's opening brief, certain findings essential to support the judgment are attacked as without foundation in evidence, but this ground of appeal may be disposed of on the main point presented; namely, under the letter-contract, did the trial court commit error in the reception of evidence of conversations occurring prior to the date of the letter.

Section 1649 of the Civil Code provides: "If the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." A mere reading of the contract-letter suggests immediately the questionable purpose of the insertion of two varying analyses. What was the description of the approximate one hundred twenty-five tons of Southern Pacific Babbitt Skimmings "described by you"? Was it the analysis of less commercial value, or the greater? Was it the analysis of greater or less total yield? Was it the percentage of each respective metal, and if so, was it the first or the second reading that was contracted for? Was it both or neither? Was this an express or implied warranty, or was it just a designation or description of the tonnage of metal of which the analyses were made, without representation as to the correctness of either analysis in metallurgical content? It is a well known fact that the metallurgical content controls the quality and usability of a quantity of metals, and therefore it must be definite or designated, as calculated or approximated, in order to come within the purview of the statu-

tory definition of an express warranty. If these questions cannot be answered from the contract itself; then the contract is ambiguous and its interpretation may possibly be determined from the previous conversation referred to in the letter; and if not, then from all of the circumstances under which it was made, including the relation of the parties. (Code Civ. Proc., sec. 1860; *Wachs* v. *Wachs,* 11 Cal. (2d) 322 [79 Pac. (2d) 1085]; *California C. P. Growers* v. *Williams,* 11 Cal. (2d) 221, 227 [78 Pac. (2d) 1154].)

■ This contract is ambiguous. The purpose of the insertion of two analyses is answered by the testimony of the manager of appellant corporation who prepared the contract and testified: "A. Yes, but the point is I had to identify the material and that is the reason I put in those two analyses. Q. In other words, that was merely for identification? A. If I didn't have something to go on, what would I have bought? They could have shipped anything." The evidence further disclosed that the separate analyses were made by prospective purchasers other than appellant; that respondent, engaged in the scrap iron business, made no independent analyses, and in fact this was his first deal in non-ferrous metals; that the manager of appellant corporation had the benefit of three years of training at Columbia University in mining and metallurgy and had been continuously engaged in the purchase of oils and metals for a number of years. The figures contained in the two analyses were first obtained by appellant's manager from a representative of another prospective purchaser. Subsequently respondent showed copies of the analyses to appellant but, according to the testimony of appellant, respondent "didn't want to have anything to do with the question of analysis. He wanted to sell them on a flat price regardless of the outcome". "Mr. Ward suggested that I go up to Sacramento and satisfy myself, yes." Upon the above facts and other similar evidence, including the contract, the court was justified in finding "That it is not true that it was agreed between Du Val Moore & Co., a corporation, plaintiff, and Ivan Ward, defendant, that said quantity of *Babbitt Skimmings* to be purchased under the terms of said agreement would contain the percentage of metals set forth and listed in said agreement, or would contain any specified percentage of metals; and in this connection, the Court further finds that the analyses set forth in said agreement con-

taining listed metals and percentages were incorporated in said agreement for the sole purpose of identifying the subject matter of the sales contract."

In *California Jewelry Co.* v. *Provident Loan Assn.*, 6 Cal. App. (2d) 506 [45 Pac. (2d) 271], relied upon by appellant, the writing set forth a definite agreement. In the present case extrinsic evidence was required to aid in the interpretation of the intent of the parties because the buyer could not have relied on the inconsistent analyses as a basis for the purchase.

The description of the property sold, we find in the letter-contract, is (1) "approximate one hundred to one hundred and twenty-five tons", (2) "Southern Pacific Babbitt Skimmings", and from the evidence we discover that the skimmings were the same skimmings from which two certain samples had been taken, and subsequently two analyses had been made which were inserted in the agreement only for the purpose of identifying the particular material. So far as we may ascertain from the transcript of testimony, the goods contracted for were the goods sold, and no misstatement as to the kind or variety appears in the written instrument or the oral testimony.

 This case was tried upon the theory that the contract in question was an express warranty. On appeal, in addition to the attempt to sustain that theory, the claim is presented that there was an implied warranty that the goods in question would conform to the description. (Civ. Code, sec. 1734.) In *Smith* v. *Zimbalist*, 2 Cal. App. (2d) 324, 333 [38 Pac. (2d) 170], the court said: "Without burdening this opinion with the citation of additional authorities, it may suffice to state that, although the very early decisions may hold to a different rule, all the more modern authorities, including many of those in California to which attention has been directed (besides the provisions now contained in sec. 1734, Civ. Code), are agreed that the description in a bill of parcels or salenote of the thing sold amounts to a warranty on the part of the seller that the subject-matter of the sale conforms to such description. (See, generally, 22 Cal. Jur. 994; 55 Cor. Jur. 738 et seq.; 24 R. C. L. 171; and authorities respectively there cited.)" Appellant argues that if the corporation agreed to buy "Babbitt Skimmings" containing 83.65 per cent lead and 1.90 per cent copper, it did not want

skimmings containing 51.43 and 12.07 per cent of lead and copper respectively. The difficulty in approving appellant's theory is that the sale did not come within the usage of trade provisions; the seller was not a grower or manufacturer, and the buyer did not rely on the seller's skill or judgment. (Civ. Code, sec. 1735.) On the contrary, the term "Babbitt Skimmings" is utterly meaningless in determining even an approximate nature of the substance. It is a conglomerate mass of materials, skimmed from the top of a vat containing molten metals, which is then dumped into a pile containing anything from dirt to broken bits of wood. The respondent never affirmed as a fact that the skimmings would conform to either analysis. They had not been prepared under his direction, and respondent had no knowledge of the correctness of either analysis, which appellant well knew; and finally, the analyses were inserted into the contract by appellant, and appellant relied not upon any inducement by respondent but upon the analyses prepared by third parties. In *Smith* v. *Zimbalist, supra,* each party believed and assumed that the articles sold were genuine, and the general conduct of the parties led to a decision that no enforceable sale had taken place. In the instant case, the refusal of the manager of the appellant corporation to inspect the skimmings or to make his own analyses, followed by his conduct in seeking a warranty by insertion of the analyses into the contract when he knew that respondent was not prepared to affirm the correctness of either analysis, takes appellant corporation without the category of one entitled to damages upon an implied warranty.

The judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.