[No. H004655. Sixth Dist. Oct. 30, 1989.]

LOREN R. MOSHER, Plaintiff and Respondent, v.
MAYACAMAS CORPORATION, Defendant and Appellant.

**COUNSEL**

William J. Arnone, Jr., Eric T. Davis and Merrill & Arnone for Defendant and Appellant.

F. Bryant McOmber, Jr., for Plaintiff and Respondent.

## Opinion

**FOGEL, J.\***—Mayacamas Corporation appeals from a summary judgment in favor of plaintiff Loren R. Mosher in a breach of contract action.

Appellant contends that the trial court erred in precluding it from avoiding, rescinding or reforming its contractual obligations in light of a precipitous decline, subsequent to sale, in the value of the real property which was the subject of the contract. For reasons we shall discuss, we find no error and affirm the judgment.

### Facts

In 1976, plaintiff and his brother, Roger L. Mosher, invested in a townhouse at Lake Tahoe. Each held an undivided one-half interest. Roger Mosher thereafter managed the investment, organizing several trades which resulted in the brothers' ownership of three Lake Tahoe properties by the time of the transaction at issue in this case.

In 1982, Roger Mosher proposed that appellant Mayacamas Corporation (an entity formed to engage in investments for Roger Mosher and his family) buy out plaintiff's interest in the properties. After a period of negotiation, plaintiff accepted appellant's proposed price of $502,750 (less assumed debt of $312,750, leaving a net due to plaintiff of $190,000 with $50,000 down and the remainder to be paid with interest over five years). The contract of sale was prepared by Roger Mosher in his capacity as chief executive officer of appellant.[1] Following execution of the contract on October 12, 1982, appellant made the down payment and paid $40,000 principal and $10,500 interest over the next two years.

Beginning in early 1985, property values at Lake Tahoe declined drastically. For purposes of plaintiff's motion for summary judgment, it was undisputed that a principal cause of the decline was impending federal tax legislation (later enacted as the Tax Reform Act of 1986)[2] which substantially eliminated tax benefits for secondary residences. Appellant subsequently liquidated the properties acquired under the contract for approximately $115,000 and ceased making payments to plaintiff.

On April 30, 1986, plaintiff filed his complaint for breach of contract, seeking the balance of the purchase price plus accrued interest and costs. Appellant filed a cross-complaint seeking rescission on the basis of mistake

---

\* Assigned by the Chairperson of the Judicial Council.

[1] Roger Mosher is also an attorney.

[2] Public Law No. 99-514 (Oct. 26, 1986) 100 Statutes at Large 2085.

of fact as to the valuation of the properties and failure of consideration. In its opposition to plaintiff's motion for summary judgment, appellant also suggested that the trial court could reform the contract to express what it alleged to be the parties' mutual intent that the parties share the risk of any post-sale diminution in the value of the properties. The trial court found as a matter of law that plaintiff was entitled to full performance of the contract.

## DISCUSSION

We begin with two familiar observations concerning our standard for review. ■ First, we recognize that "[i]n reviewing the granting of a summary judgment we must make an independent determination of the construction and effect of the papers submitted to the trial court. [Citation.] We are directed to strictly construe the papers of the moving party and liberally construe those of the opponent, and any 'doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion.' [Citation.]" (*Walter E. Heller Western, Inc.* v. *Tecrim Corp.* (1987) 196 Cal.App.3d 149, 156 [241 Cal.Rptr. 677].) ■ Second, we note the general rule that we must sustain the ruling of the trial court, without regard to the reasons given by that court, if the ruling was correct on any legal ground. (*West Pico Furniture Co.* v. *Superior Court* (1961) 56 Cal.2d 407, 413 [15 Cal.Rptr. 119, 364 P.2d 295].)

■ Appellant contends that summary judgment should not have been granted because three triable issues of material fact were presented: whether there was a mistake of fact with respect to the valuation of the properties, whether there was a "basic assumption" by the parties at the time of entering into the contract that the tax benefits generated by the properties would continue indefinitely, and whether the parties intended to share the risk of any subsequent decline in value.[3] The trial court found as a matter of law that appellant failed to establish the existence of any of these issues. We agree.

Mistake of fact justifying relief from the obligations of a contract is defined in Civil Code section 1577 as follows: "Mistake of fact is a mistake, not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in: [¶] 1. An unconscious ignorance or forgetfulness of a *fact past or present,* material to the contract; or, [¶] 2. Belief in the *present existence* of a thing material to the contract, which *does not*

---

[3] In the trial court, appellant also asserted defenses of impossibility and impracticability of performance. The trial court's ruling on these matters apparently is not a subject of the instant appeal.

*exist,* or in the *past existence* of such a thing, which *has not existed.*" (Italics added.)

Appellant asserts that the valuation of the Lake Tahoe properties which formed the basis of the 1982 contract was grossly overstated, an assertion which might raise a triable issue of fact were it supported by evidence that the valuation was overstated *at the time of the sale.* However, the entire thrust of appellant's claim appears to be that the valuation was rendered mistaken *by subsequent events,* i.e., the adverse tax legislation which began affecting Lake Tahoe real estate in 1985 and was ultimately enacted in 1986, nearly four years after the parties' transaction.

As the italicized language in Civil Code section 1577 makes clear, there is no legal authority for appellant's position. Absent evidence that the existence of a future contingency (e.g., continuation of tax benefits) is an assumption of the contract (about which more in a moment), the defense of mistake of fact must be premised on past or present facts about which the parties are ignorant or mistaken. There was no evidence presented to the trial court that the valuation of the properties proposed by appellant itself in 1982 was erroneous in light of facts then or previously in existence.

*Smith* v. *Zimbalist* (1934) 2 Cal.App.2d 324 [38 P.2d 170], cited by appellant, is distinguishable and actually demonstrates the illogic of appellant's argument. In *Smith,* an internationally famous violinist contracted to purchase two violins, believed by both buyer and seller to be a "Guarnerius" and a "Stradivarius," at a price commensurate with their supposed value. He later discovered that the violins were not genuine and ceased making payments. The trial court excused further performance on the ground of mutual mistake of fact as to the identities of the violins.

The distinction between the present case and *Smith* is self-evident. The violins *never were* what they were believed to be; they *never had* the value which the parties imputed to them. By contrast, the only evidence before the trial court here was that the value of the Lake Tahoe properties was diminished by events occurring years after the sale. Adoption of appellant's argument would expose virtually any unprofitable contract to legal attack upon the later occurrence of unforeseen adverse events.

Perhaps aware of the havoc a literal acceptance of its mistake of fact contention would wreak, appellant also argues that there are triable issues of fact as to whether the parties assumed a continuation of favorable tax treatment of the properties and resultant high valuation in entering into the contract and as to whether they intended to share the risk of any postsale economic adversity. In its brief opposing summary judgment, appellant

alleged that "[t]he basic assumption under which the parties were operating was that the second home marketplace would not be destroyed as a result of government intervention." Appellant also argued that since the parties' *original* business relationship was a "50/50 deal" it must have been their intention that the risks attendant to the 1982 transaction would be shared equally. Unfortunately, appellant produced no competent evidence as to either of these issues. The parties' written agreement, prepared by Roger Mosher, contained no language to that effect, nor was there evidence of any oral agreement or understanding. At most, as the trial court noted, there "may have been the unrevealed subjective view of Mayacamas."

As the trial court correctly observed, appellant's predicament has resulted, as a matter of law, from an "error in judgment" rather than a mistake of fact or failure of consideration. (See *M. F. Kemper Const. Co.* v. *City of L. A.* (1951) 37 Cal.2d 696, 703 [235 P.2d 7].) Appellant chose to enter into the subject contract knowing that tax benefits were a major aspect of the value of the properties and presumably knowing that the availability of such benefits could be affected by future legislation, yet it made no provision with respect to tax matters in the contract which its own chief executive officer prepared. The risk of a mistake in such circumstances clearly was borne by appellant. (See Rest.2d Contracts, § 154.) Because there was insufficient evidence to entitle appellant to avoid, rescind or reform the contract, the trial court properly granted summary judgment.

### Disposition

The judgment is affirmed. Costs on appeal are awarded to respondent.

Agliano, P. J., and Cottle, J., concurred.

A petition for a rehearing was denied November 21, 1989, and appellant's petition for review by the Supreme Court was denied February 14, 1990.