Filed 3/6/15  Kovary v. Antal CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| STEVEN A. KOVARY,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>TIMEA ANTAL et al.,<br><br>Defendants and Respondents. | B252420<br><br>(Los Angeles County<br>Super. Ct. No. YC067023) |

APPEAL from judgment of the Superior Court of the County of Los Angeles, Cary H. Nishimoto, Judge.  Affirmed.

Broedlow Lewis LLP, Jeffrey Lewis for Plaintiff and Appellant.

Slaughter & Reagan LLP, Barry J. Reagan, Gabriele M. Lashly and Amanda C. Happle for Defendants and Respondents.

# I.  INTRODUCTION

Plaintiff, Steven A. Kovary, appeals from a judgment in favor of defendants: Timea Antal; Miklos Perehazy; United Magyar Title Holding; and United Magyar House, Incorporated (United Magyar House).  Defendants initially hired plaintiff to assist in addressing their tax issues with the Internal Revenue Service.  Plaintiff later filed a complaint against defendants for defamation and rescission of a service contract.  We affirm the judgment.

# II.  BACKGROUND

## A.  Plaintiff's First Amended Complaint

Plaintiff filed his action on May 3, 2012.  Plaintiff filed his amended complaint on September 19, 2012.  Plaintiff alleges the following.  He worked for United Magyar House as an accountant in June 2010.  Plaintiff hired Ms. Antal to work for him.  Ms. Antal was a member of the United Magyar House directors board with Mr. Perehazy.  Mr. Perehazy was the president of United Magyar House.  At various points in the first amended complaint, plaintiff alleges all defendants engaged in specified conduct.  We will utilize his sometimes awkward reference to all defendants in relating to his allegations.

Plaintiff proposed to assist United Magyar House with its tax problems by preparing a Form 1024 for $5,000.  Mr. Perehazy represented that United Magyar House suffered financial hardship and could not pay the requested fee.  Plaintiff learned in December 2010 that United Magyar House had non-exempt revenues and assets that were more than sufficient to pay his fee.  Plaintiff also learned the higher revenue dramatically changed the tax problem faced by United Magyar House as he calculated the liability.  In June 2010, plaintiff agreed to reduce his fee from $5,000 to $2,500.  Plaintiff

2

negotiated a settlement with the Internal Revenue Service for a reduction of potential tax liabilities for United Magyar House. By March 2011, the Internal Revenue Service agreed to forego taxes and applicable tax penalties if United Magyar House formed a new entity for holding its income-generating real property. This entity became United Magyar House Title Holding.

By December 2010, Ms. Antal continued to work for plaintiff. On December 30, 2010, plaintiff discovered Ms. Antal surreptitiously removed all of United Magyar House's documents from his office. Plaintiff confronted Ms. Antal about the documents and she admitted removing them. Plaintiff terminated Ms. Antal's employment.

In March 2011, United Magyar House expected plaintiff to continue working to solve its tax problems. It wanted plaintiff to help perform legal services for forming a new corporation and an application for not-for-profit recognition. United Magyar House expected plaintiff to perform these extra services at no extra charge beyond the $2,500 fee agreed to in June 2010.

In April 2011, plaintiff terminated his working relationship with United Magyar House based on the parties' inability to come to an agreement regarding payment of his fees. The parties also had a dispute regarding United Magyar House's false statements regarding its finances, which concealed the true extent of the tax problems.

Plaintiff believed that in July 2011, United Magyar House held a directors board meeting to discuss his service performance. Ms. Antal and Mr. Perehazy made false statements regarding plaintiff. Specifically, they reported that plaintiff had incorrectly filed "a return under the wrong law" and refused to correct the mistake unless he was paid a second time for the same services. United Magyar House's directors board voted to file an administrative complaint against plaintiff with the California Board of Accountancy (accounting board).

On August 2, 2011, defendants filed an administrative complaint against plaintiff with the accounting board. The board complaint alleged plaintiff committed professional negligence in advising United Magyar House. The accounting board administrative

3

complaint alleged plaintiff made mistakes that were caused by his "poor and superficial handling" of the case. The accounting board administrative complaint also alleged plaintiff, "failed to successfully perform and did execute in a negligent and unskillful manner" to United Magyar House's detriment. The accounting board's administrative complaint also alleged plaintiff insisted on being paid a second time for the same work. Plaintiff listed the following defamatory statements in the accounting board administrative complaint: he made a mistake in filing for tax-exempt status; he poorly and superficially handled the case; and he insisted on being paid twice for the same work.

Since April 2011, defendants have published and republished false statements about plaintiff and his competence to third parties and to the Hungarian community in Los Angeles. These false statements have harmed plaintiff and have caused an appreciable decline in his business revenue and social standing in the community. Plaintiff alleges the July 2011 board meeting also contained false statements. Defendants indicated plaintiff incorrectly filed a form with the Internal Revenue Service and failed to correct it. Defendants also stated during the meeting that plaintiff insisted on being paid twice for the same work.

Plaintiff also alleges Ms. Antal made false statements about his competence and integrity in February or March 2012. Ms. Antal made these statements while attending services at the Hungarian Reformed Church in Ontario, California. Numerous people in attendance at the church heard the statements. Plaintiff alleges he acted with diligence and competence. Plaintiff alleges: loss of reputation, shame and loss of business revenue from the false statements; defendants intentionally acted to cause him extreme economic hardship; and defendants acted with malice, hatred, ill will and were motivated by anti-Semitism.

Plaintiff's second cause of action is for rescission against United Magyar House only. Mr. Perehazy, on behalf of United Magyar House, made statements to plaintiff regarding the finances and revenue. The statements were material to plaintiff accepting working with United Magyar House and what fee would be charged. Plaintiff contended

4

a mutual mistake existed regarding the amount of non-exempt revenue generated and funds paid for the services. Plaintiff maintains he would not have advised filing for non-profit status if he had been apprised of the true facts. He also would not have accepted a discounted fee for his services if he knew United Magyar House had the resources to pay more. As to the defamation cause of action, plaintiff seeks compensatory and exemplary damages. As to the second cause of action, plaintiff seeks rescission of the contract and restitution for the benefits obtained by defendants for his services. Finally, plaintiff seeks costs of suit and other relief as appropriate.

## B. Defendants' Summary Judgment Motion

On June 13, 2013, defendants moved for summary judgment. Defendants asserted both of plaintiff's causes of action lacked merit. Defendants contended: the litigation privilege under Civil Code section 47, subdivision (b) protected all of defendants' alleged defamatory statements in the accounting board administrative complaint; there were no triable issues of fact regarding the alleged defamatory statements made by Ms. Antal at the Hungarian Reformed Church; plaintiff's only evidence was based on inadmissible triple hearsay; as to the second cause of action, plaintiff admitted there was no mutual mistake during his deposition; and any mistake regarding the price of the services to be provided was plaintiff's own. Finally, defendant argues no evidence supported an award of punitive damages.

On August 16, 2013, plaintiff filed his summary judgment opposition. Plaintiff argued: several emails written by Ms. Antal in 2011 accused him of being a liar, incompetent and unfamiliar with tax law; Mr. Perehazy made false statements in written letters dated April 8, 2011, to the Internal Revenue Service and United Magyar House's directors board; and Mr. Perehazy also made false statements on May 16, 2011, in letters to the United Magyar House directors board. Also, plaintiff argued United Magyar House made false statements on August 2, 2011, when it filed the accounting board

5

complaint. In April 2012, Mr. Perehazy stated to the United Magyar House directors board the false statement that plaintiff could not reestablish its not-for-profit status. United Magyar House currently holds not-for-profit status. And plaintiff maintained there remained triable issues of fact concerning punitive damages. Plaintiff cited to several statements made by Mr. Perehazy. These statements were to make plaintiff's life miserable.

On August 23, 2013, defendants filed their reply. Defendants asserted the additional evidence of allegedly defamatory statements cited by plaintiff was subject to the litigation privilege. Defendants argued the letters and e-mails were written in preparation for litigation. Defendants maintained plaintiff presented no evidence raising triable issues of fact as to the rescission and punitive damages issues. Defendants argued plaintiff's cited evidence concerning punitive damages was also protected by the litigation privilege. Finally, defendants asserted plaintiff had no evidence they were motivated by anti-Semitism.

## C. Defendants' Undisputed Facts

Plaintiff is a certified public accountant. United Magyar House is a non-profit organization that operates for the benefit of individuals of Hungarian descent. In 2010, for a $2,500 fee, plaintiff agreed to prepare Form 1024 and to negotiate with the Internal Revenue Service for elimination or reduction of United Magyar House's tax liability. Before agreeing to perform the work, plaintiff talked to the Internal Revenue Service supervisor who handled the case. In the conversation, the supervisor and plaintiff agreed filing under Internal Revenue Code section 501(c)(4) would be appropriate based on the information disclosed in the 2004 audit. At the time plaintiff discussed the Internal Revenue Service Code section 501(c)(4) application, he did not have United Magyar House's financial records. Plaintiff was not provided any accounting records except for the 2004 audit. Plaintiff assumed revenue projections based on the 2004 audit.

6

Plaintiff was paid the flat fee. He filed the Internal Revenue Service Code section 501(c)(4) application. The Internal Revenue Service received additional financial documents and determined United Magyar House did not qualify for Internal Revenue Service Code section 501(c)(4) status because of increased revenue. It was necessary to form an additional corporation to hold the income producing revenue and to re-file an application under Internal Revenue Service Code section 501(c)(3) for United Magyar House. Plaintiff requested United Magyar House pay him $1,750 to perform the additional work to regain its tax exempt status for United Magyar House. When United Magyar House refused, plaintiff resigned. Plaintiff did not perform the additional work required to reinstate United Magyar House's tax exempt status.

In August 2011, United Magyar House filed the accounting board administrative complaint. The accounting board administrative complaint allegedly contained false statements that plaintiff made mistakes, insisted on being paid twice and committed professional negligence in advising United Magyar House. Ms. Antal did not publish false statements about plaintiff's competence and integrity in February or March 2012 while she attended the Hungarian Reform Church in Ontario, California.

Defendants assert they did not publish or republish false statements about plaintiff and his competence to third parties or the Hungarian community. Defendants made actual statements in connection with the accounting board administrative complaint. They denied: undertaking their actions to retaliate against plaintiff for terminating Ms. Antal's employment; acting with malice or oppression towards plaintiff; and being motivated in their actions by anti-Semitism. Finally, as to the second cause of action, plaintiff admitted in his deposition there was no mutual mistake when he entered into the agreement with United Magyar House to provide tax services. Because of the crucial nature of plaintiff's discovery admission at his deposition, we will set forth its context later in this opinion.

### D. Plaintiff's Response to Defendants' Undisputed Facts

Plaintiff cited several additional e-mails purporting to demonstrate defamatory statements by defendants. On March 29, 2011, Ms. Antal sent an e-mail about plaintiff to Robert Gyori. Mr. Gyori is a member of United Magyar House, though not a member of the directors board. The e-mail contained a letter written by Mr. Perehazy to plaintiff. Plaintiff construed the letter as accusing him of failing to communicate with United Magyar House and implying he was a liar.

On April 8, 2011, Mr. Perehazy wrote a letter to plaintiff that was also sent to Sirijun Mayi, an Internal Revenue Service specialist. Plaintiff contended the letter accused him of lying to United Magyar House, making up stories and wasting funds while getting an education from the Internal Revenue Service. Plaintiff denied making up stories and lying to United Magyar House.

On May 16, 2011, Mr. Perehazy wrote to plaintiff on behalf of the United Magyar House directors board. The letter accused plaintiff of failing to properly advise and guide United Magyar House. The letter also accused plaintiff of failing to exercise due diligence and adequate professional care. The letter was distributed to the United Magyar House directors board and Mr. Gyori. Plaintiff denied making an incorrect Internal Revenue Service filing. Plaintiff denied failing to exercise due diligence and adequate professional care.

On May 21, 2011, Mr. Perehazy e-mailed plaintiff. In plaintiff's view, the May 21, 2011 letter threatened his good standing in the Hungarian community if he did not agree to complete further work for United Magyar House. On August 2, 2011, Mr. Perehazy republished the accounting board administrative complaint to the United Magyar House board. In April 2012, Mr. Perehazy informed the United Magyar House directors board that plaintiff was unable to reestablish its not-for-profit status. Plaintiff denied this, contending he could have reestablished its not-for-profit status. Plaintiff

8

testified Mr. Perehazy knew or should have known the true facts concerning the revenue of United Magyar House.

### E. Defendants' Reply to Plaintiff's Response

Defendants contended all of plaintiff's additional exhibits are either privileged or not defamatory. In the March 29, 2011 letter, Mr. Perehazy stated, "I have asked you on several occasions to send us a written summary of the above advice you received from the [Internal Revenue Service] and communicated to us by telephone, as well as the details of the agreement between you and the [United Magyar House]; as of yet, I have not received either." Defendants asserted plaintiff presented no evidence he actually provided the requested document.

Defendants contended the April 8, 2011 letter was in preparation for litigation. It concluded by stating, "Mr. Kovary, we urge you to refund us the $2,500 and do not force us to pursue legal actions." Regarding the May 16, 2011 letter, defendants asserted it was done in preparation for litigation. The May 16, 2011 letter stated, "Should you fail to refund the Corporation the $2,500.00 by June 30, 2011, as demanded, the Corporation will file an official complaint with the California Board of Accountancy regarding this dispute and will initiate a small claims suit against you without any further notice." Defendant's separate statement asserted plaintiff did not provide any evidence the May 21, 2011 letter was distributed to third parties. Additionally, the May 21, 2011 letter stated, "[W]e are determined to take our case to the appropriate forums to obtain justice and ultimate resolution." Regarding the alleged April 2012 statement by Mr. Perehazy, he testified he had a duty to inform the United Magyar House directors board of all activities.

9

## F. Trial Court's Ruling

On September 9, 2013, the trial court granted defendants' summary judgment motion. The trial court ruled defendants had demonstrated the alleged defamatory statements were privileged under Civil Code section 47, subdivision (b). Regarding the additional statements raised in plaintiff's opposition, the trial court found they were beyond the scope of the pleadings. The trial court noted the additional alleged defamatory statements were either protected under the litigation privilege or merely statements of opinion and not defamatory. As to the rescission claims, the trial court ruled plaintiff failed to refute defendants' undisputed facts that indicated no mutual mistake occurred. The trial court likewise ruled there were no triable issues regarding punitive damages under the defamation cause of action. The trial court entered judgment on October 8, 2013. Plaintiff subsequently appealed.

## III. DISCUSSION

### A. Overview

In *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, at pages 850-851, our Supreme Court described a party's burden on summary judgment motions as follows: "[F]rom commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law. That is because of the general principle that a party who seeks a court's action in his favor bears the burden of persuasion thereon. [Citation.] There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof. . . . [¶] [T]he party moving for summary judgment bears an initial burden of production to make a prima

10

facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact. . . .  A prima facie showing is one that is sufficient to support the position of the party in question.  [Citation.]" (Fns. omitted; see *Kids' Universe v. In2Labs* (2002) 95 Cal.App.4th 870, 877-878.)

We review an order granting summary judgment de novo.  (*Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336; *Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65, 67-68.)  The trial court's stated reasons for granting summary judgment are not binding because we review its ruling not its rationale. (*Coral Construction, Inc. v. City and County of San Francisco, supra,* 50 Cal.4th at p. 336; *Continental Ins. Co. v. Columbus Line, Inc.* (2003) 107 Cal.App.4th 1190, 1196.)  In addition, a summary judgment motion is directed to the issues framed by the pleadings.  (*Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1252; *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673, overruled on a different point in *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 527, fn. 5.)  These are the only issues a motion for summary judgment must address.  (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1249–1250; *Goehring v. Chapman University* (2004) 121 Cal.App.4th 353, 364.)  We will discuss in great depth later the requirement that the responding party's evidence be directed at the issues raised by the first amended complaint.

### B.  The Defamation Cause of Action Has No Merit

Plaintiff argues defendants did not meet their burden of producing evidence showing the litigation privilege applied.  Plaintiff contends defendants did not present evidence of a connection between the August 2011 board complaint and the defamatory statements.  Plaintiff does not dispute defendants' argument that Ms. Antal did not make

11

false statements while attending the Hungarian Reformed Church in February or March 2012. Three of the alleged defamatory statements referenced in the first amended complaint are in the accounting board administrative complaint. Plaintiff does not contest that statements made in the board complaint were protected by the litigation privilege. Thus, plaintiff's only argument concerns the statements made during the July 2011 United Magyar House directors board meeting.

Pursuant to Civil Code section 47, subdivision (b): "A privileged publication or broadcast is one made: [¶] . . . [¶] In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable [by writ]. . . ." Our Supreme Court has held: "The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212; accord, *Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241.) According to our Supreme Court: "'[C]ommunications with "some relation" to judicial proceedings' are 'absolutely immune from tort liability' by the litigation privilege. [Citation.] It is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards. [Citation.]" (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1057; see *Tom Jones Enterprises, Ltd. v. County of Los Angeles* (2013) 212 Cal.App.4th 1283, 1294.) An administrative complaint filed with the accountancy board qualifies as a quasi-judicial proceeding. (See *Silberg v. Anderson*, *supra*, 50 Cal.3d at p. 213 ["[C]ourts have applied the privilege to eliminate the threat of liability for communications made during all kinds of truth-seeking proceedings: judicial, quasi-judicial, legislative and other official proceedings."]; *Moore v. Cal. State Bd. of Accountancy* (1992) 2 Cal.4th 999, 1010 [accountancy board regulates public accounting profession, including discipline by the board for fraud, dishonesty or other specified acts].)

12

Further, the alleged statements made during the July 2011 United Magyar House meeting are communications with some relation to a quasi-judicial proceeding. As alleged in plaintiff's first amended complaint, the United Magyar House directors board discussed pursuing an accounting board administrative complaint against plaintiff during the meeting. Based on Ms. Antal and Mr. Perehazy's allegedly false statements, the United Magyar House directors board voted to authorize the filing of the accounting board administrative complaint. Those allegedly false statements are communications with some relation to a quasi-judicial proceeding. The statements would thus be privileged under Civil Code section 47, subdivision (b).

Plaintiff also cites to additional alleged defamatory statements in his opposition. As we will explain, four of these statements are in writing and constitute libel. The trial court found the additional defamatory statements were beyond the pleadings and did not have to be considered. Plaintiff asserts the defamatory statements presented in the opposition did not introduce any legal theories and were consistent with the allegations in the complaint. Plaintiff had alleged in the first amended complaint, "Since April 2011, defendants have published and republished false statements about [plaintiff] and his competence to third parties and to the Hungarian community in Los Angeles." Thus, plaintiff contends the trial court erred by not considering the additional defamatory statements.

There are a number of differences between libel and slander. Pursuant to Civil Code section 45, "Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Under Civil Code section 46, "Slander is a false and unprivileged publication, orally uttered, and also communications by radio or any mechanical or other means . . . ." The alleged defamatory statements for libel must be specifically identified in the complaint, if not pleaded verbatim. (*Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 31; *Vogel v. Felice* (2006) 127 Cal.App.4th 1006,

13

1017, fn. 3; *Kahn v. Bower* (1991) 232 Cal.App.3d 1599, fn. 5; cf. *Okun v. Superior Court* (1981) 29 Cal.3d 442, 458 ["[S]lander can be charged by alleging the substance of the defamatory statement."].)

One of the additional alleged statements, the discussion of the accounting board administrative complaint to the United Magyar House directors board, would fall within the litigation privilege as previously discussed. Plaintiff failed to properly plead the four other allegedly libelous statements; viz., written defamatory statements. The four additional alleged defamatory statements raised in plaintiff's opposition were *written letters or e-mails* dated March 29, April 8 and May 16 and 21, 2011. It is undisputed plaintiff failed to specifically plead these four additional alleged written defamatory statements in his first amended complaint. Plaintiff's allegation of defendants publishing false statements about him regarding his competence to third parties does not cure this deficiency.

We turn now to the well established rule concerning allegations presented in a summary judgment opposition and do so in the context of allegedly libelous matter. The Court of Appeal has held: "[T]he pleadings set the boundaries of the issues to be resolved at summary judgment. (*Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 90; see also *FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, 381.) A 'plaintiff cannot bring up new, unpleaded issues in his or her opposing papers. [Citation.]' (*Government Employees Ins. Co. v. Superior Court* (2000) 79 Cal.App.4th 95, 98-99, fn. 4; see also *Keniston v. American Nat. Ins. Co.* (1973) 31 Cal.App.3d 803, 812 [summary judgment declarations 'must be directed to the issues raised by the pleadings'].) A summary judgment or summary adjudication motion that is otherwise sufficient 'cannot be successfully resisted by counterdeclarations which create immaterial factual conflicts outside the scope of the pleadings; counterdeclarations are no substitute for amended pleadings.' (*AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1065.) Thus, a plaintiff wishing 'to rely upon unpleaded theories to defeat summary judgment' must move to amend the complaint before the hearing.

14

(*Leibert v. Transworld Systems, Inc.* (1995) 32 Cal.App.4th 1693, 1699; see also *580 Folsom Associates* [(1990)] 223 Cal.App.3d 1, 18.)" (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 647; see *Planned Parenthood v. City of Santa Maria* (1993) 16 Cal.App.4th 685, 690 ["[Plaintiff] cannot use a summary judgment motion to expand the scope of a complaint."])

This rule has special application in our case because of the specific pleading requirement for libelous statements. (*Gilbert v. Sykes*, *supra*, 147 Cal.App.4th at p. 31; see *Okun v. Superior Court* (1981) 29 Cal.3d 442, 458.) Here, no amendment motion was filed to allege the four libelous statements as a basis for the defamation claim. Thus, as to these four alleged libelous statements, the trial court correctly declined to consider them in ruling that plaintiff's defamation claim has no merit.

The sixth alleged defamatory statement, Mr. Perehazy's statement to the United Magyar House board regarding the not-for-profit status, would be alleged slander. Mr. Perehazy allegedly stated that plaintiff "was unable to reestablish United Magyar House's" not-for-profit status. However, this statement is not defamatory. It is undisputed plaintiff did not reestablish United Magyar House's not-for-profit status because he stopped working for them. (See *Gilbert v. Sykes, supra,* 147 Cal.App.4th at p. 28 [truth is complete defense against civil liability for defamation]; see *Ringler Associates Inc. v. Maryland Casualty Co.* (2000) 80 Cal.App.4th 1165, 1180.) The trial court did not err by refusing to consider the six additional alleged defamatory statements raised by plaintiff. The trial court properly ruled plaintiff's defamation cause of action had no merit. Because this cause of action had no merit, we do not address plaintiff's arguments for punitive damages.

C. The Court Properly Ruled Plaintiff's Rescission Cause of Action Has No Merit

Plaintiff argues the trial court erred by finding no mutual mistake occurred as to the service contract. Plaintiff asserts Mr. Perehazy knew or should have known the

15

revenues for United Magyar House. Plaintiff contends he had no meeting of the minds as to the revenue prior to accepting the contract. Defendants contend there was no mutual mistake and thus the rescission cause of action cannot be established.

A party may rescind the contract if its consent was given by mistake. (Civ. Code, § 1689, subd. (b)(1); *Donovan v. RRL Corp.* (2001) 26 Cal.4th 261, 278.) Civil Code section 1577 states in relevant part: "Mistake of fact is a mistake, not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in: [¶] 1. An unconscious ignorance or forgetfulness of a fact past or present, material to the contract . . . ."

Plaintiff testified in his deposition: "It wasn't even a mistake. It was I subsequently discovered that the revenue -- the proportion of revenue has drastically changed." The full context of plaintiff's admissions at his deposition is as follows: "Q. In your lawsuit, . . . you have a cause of action for recis[s]ion based upon mutual mistake by you and by [United Magyar House]. [¶] [Y]ou allege that there was a mutual mistake as to the amount of nonexempt revenue that [United Magyar House] generated. [¶] A It wasn't really mutual. [¶] Q Was it - - [¶] A That has changed. It was unilateral. Q Who made the mistake? A It wasn't even a mistake. It was subsequently discovered that the revenue - - the proportion of revenue had drastically changed." Later, the following transpired at plaintiff's deposition: "Q You said there was a mutual mistake about the amount of funds that [United Magyar House] had to pay to retain a CPA to obtain nonprofit status for [United Magyar House]. [¶] A I don't know. A mistake? [¶] Q That's what you're alleging. [¶] A Okay. I think that needs to be corrected, because the mistake was that the value of the work was much greater than what was ultimately agreed to. So I don't know where the mistake is on that." Needless to note, the foregoing constitutes a classic clear and unambiguous discovery admission. (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 22; *Archdale v. American Internat. Specialty Lines Ins. Co.* (2007) 154 Cal.App.4th 449, 473.) Plaintiff is bound by these

16

clear and unequivocal admissions. (*D'Amico v. Board of Medical Examiners*, *supra*, 11 Cal.3d at p. 21; *Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 580.)

Even if plaintiff is not uncontrovertibly bound by the foregoing testimony, the trial court correctly ruled the second cause of action has no merit. Under this alternative analysis, the foregoing testimony could be read as sufficient to shift the burden of producing evidence to plaintiff. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 851.) When the production burden shifts, the party opposing the summary judgment motion must present "specific facts" showing the existence of a triable controversy. (Code Civ. Proc., § 437c, subd. (p)(2); *Burroughs v. Precision Airmotive Corp.* (2000) 78 Cal.App.4th 681, 688; *Union Bank v. Superior Court*, *supra*, 31 Cal.App.4th at p. 590.) Where the opposition only presents speculation in lieu of specific facts, summary judgment should be entered if the burden of production has shifted. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 490; *Wiz Technology, Inc. v. Coopers & Lybrand* (2003) 106 Cal.App.4th 1, 11.) Here, no specific facts were presented as to any material mutual mistake of fact. The only evidence cited by plaintiff is the aforementioned deposition testimony. That deposition evidence does identify specific facts showing a mutual mistake of fact concerning present or past facts. A mistake of fact claim may not be based on future events. At best from plaintiff's perspective, his testimony can perhaps be construed to refer to future events. (Civ. Code, § 1577; *Paramount Petroleum v. Superior Court* (2014) 227 Cal.App.4th 226, 245; *Mosher v. Mayacamas Corp.* (1989) 215 Cal.App.3d 1, 6; see *M.F. Kemper Const. Co. v. City of Los Angeles* (1951) 37 Cal.2d 696, 703 ["Generally, relief is refused for error in judgment and allowed only for clerical or mathematical mistakes."].) The trial court correctly found the second cause of action had no merit.

## IV.  DISPOSITION

The judgment is affirmed.  Defendants, Timea Antal, Miklos Perehazy, United Magyar House Title Holding and United Magyar House, Incorporated, are entitled to their appeal costs from plaintiff, Steven A. Kovary.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


TURNER, P.J.


We concur:


MOSK, J.


GOODMAN, J.*

---

*        Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.