[No. B142179. Second Dist., Div, Seven. Feb. 6, 2002.]

DENNIS A. HARRIS, Plaintiff and Respondent, v.
RUDIN, RICHMAN & APPEL et al., Defendants and Appellants.

## COUNSEL

Heenan Blaikie, Jonathan J. Panzer and Lisa K. Skaist for Defendants and Appellants.

Parker, Mills & Patel, Jayesh Patel and Angeli Cuesta-Aragon for Plaintiff and Respondent.

## OPINION

**JOHNSON, Acting P. J.**—In this action for breach of a settlement agreement, both sides moved for summary judgment. The trial court granted plaintiff's motion and denied defendants' motion. Defendants moved for reconsideration, for an order setting aside and vacating the judgment and for a new trial. The trial court denied those motions and awarded sanctions against defendants on the latter two motions. We reverse the judgment for plaintiff because defendants raised triable issues of fact as to whether they were entitled to rescind the agreement based on a mutual mistake of fact or law. We affirm the award of sanctions which arose from a different issue.

### FACTS AND PROCEEDINGS BELOW

Plaintiff Dennis A. Harris retained the law firm of Rudin, Richman & Appel to prepare an irrevocable inter vivos trust for him. He subsequently brought a malpractice action against the firm and five of its members, Milton Rudin, Fredric Richman, Martin Appel, Raymond Kaplan and Jeffrey Berkowitz, alleging they had prepared the trust in such a way the trustees were exposed to personal liability for gift and estate taxes on distributions under the trust. Kaplan was dismissed from the malpractice action several months before the settlement negotiations which generated the present lawsuit.

The parties entered into settlement negotiations and, on August 30, 1996, counsel representing all defendants wrote a letter to Harris's counsel stating, in relevant part, "I am writing to confirm the essential terms of the settlement which we reached today. The present defendants in this matter will pay a total of $205,000 in exchange for a general release of, and complete protection against, all claims and potential claims against them arising from or related to the Dennis A. Harris Irrevocable Inter Vivos Trust Agreement. This office will prepare the initial draft of the settlement documents, and your firm should inform the Court that the matter has been resolved as soon as is reasonably practicable."

Following this letter, the parties entered into negotiations over the language of a formal written agreement. In the meantime, counsel for the parties appeared at a pretrial conference and on the scheduled trial date. On both occasions they told the trial court "that, with the exception of some additional drafting work, the matter had been resolved."

On October 25, 1996, defendants sent Harris a letter stating they had just discovered an amendment to the Probate Code which would take effect on January 1, 1997, and would eliminate the tax problem which had led to Harris's malpractice suit. In light of this amendment Harris would suffer no damage as a result of the way defendants prepared his trust and therefore, defendants announced, they were taking "the settlement arrangement off the table."

Harris responded to this letter by bringing a motion to enforce the alleged settlement agreement pursuant to Code of Civil Procedure section 664.6.[1] The trial court denied the motion on the ground the August 30 letter was not signed by all the parties as required by section 664.6. The court granted plaintiff leave to amend his complaint to add a new cause of action for breach of written contract. It then sustained defendants' demurrer to that cause of action without leave to amend.

In a reported decision, *Harris v. Rudin, Richman & Appel*[2] (*Harris I*) we affirmed the denial of the motion to enforce the settlement but reversed the judgment with respect to the cause of action for breach of contract. We held "[a]t a minimum, Harris's complaint alleges facts evidencing an oral agreement. . . . Whether the parties intended their communications to be a binding settlement agreement or an agreement to further negotiate after a formal draft was prepared is a factual question not properly the subject of a demurrer. . . ."[3]

Upon remand to the trial court, Harris amended his complaint to allege breach of an oral and written contract. Defendants answered and both sides moved for summary judgment. The trial court granted Harris's motion for summary judgment and denied defendants' motion. Defendants then moved for reconsideration, for vacation of the judgment and for a new trial. The trial court denied all three motions and imposed sanctions on defendants in the sum of $4,750. Defendants filed a timely appeal from the judgment and the sanctions awards.

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise noted.

[2] *Harris v. Rudin, Richman & Appel* (1999) 74 Cal.App.4th 299 [87 Cal.Rptr.2d 822].

[3] *Harris I, supra*, 74 Cal.App.4th at page 308, citation omitted.

## Discussion

### I. Standard of Review.

■ In order to obtain summary judgment a plaintiff must prove each element of the cause of action on which he seeks judgment. Once the plaintiff meets this burden, the burden shifts to the defendant to show there is a triable issue of material fact as to that cause of action or a defense thereto.[4] We review the trial court's decision de novo to determine whether those burdens were met.[5]

■ Defendants contend they have shown triable issues of fact exist as to whether the parties entered into a settlement agreement. They further contend even if there was an agreement they were entitled to rescind it on the basis of a mutual mistake of law or fact.

We conclude that although the undisputed facts appear to show the parties entered into an oral settlement agreement on August 30, there are triable issues of fact as to whether defendants properly rescinded the agreement on October 25.

### II. Defendants Raised Triable Issues of Fact as to Their Defense of Rescission Based on a Mutual Mistake of Law or Fact.

Defendants argue even if a settlement contract was formed they were entitled to rescind it once they learned of the amendment to Probate Code section 16081 which, in their view, negated the possibility the trustees would be exposed to personal tax liability for distributions pursuant to the trust, thereby removing the rationale for Harris's malpractice suit.[6] We conclude defendants raised triable issues of fact as to their rescission defense. Therefore the trial court erred in granting summary judgment to Harris.

■ Initially we note there is no bar to considering defendants' rescission defense even though defendants did not specifically plead the defense in their answer. Harris did not object when defendants raised the rescission defense in their separate statement of disputed and undisputed facts and

---

[4]Section 437c, subdivision (*o*)(1).

[5]*Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 163 [80 Cal.Rptr.2d 66].

[6]Harris's malpractice complaint alleged the trust was drafted in such a way as to make the trustees personally liable for taxes on trust distributions and therefore the trustees had a conflict of interest with the beneficiaries of the trust.

argued the defense in opposition to Harris's motion for summary judgment. Thus, any objection was waived.[7]

■ The evidence relating to the rescission defense is as follows.

Legislation to amend Probate Code section 16081 was introduced in February 1996 as Senate Bill No. 1907 (1995-1996 Reg. Sess.). The Senate passed the bill in May 1996 and sent it to the Assembly, which passed it with amendments in July 1996. The Senate concurred in the Assembly amendments and passed the bill on August 8, 1996. The Governor signed the bill on August 17, 1996, 13 days before the parties entered into their settlement agreement.[8]

When the parties agreed to settle the malpractice action on August 30, 1996, they were unaware of this amendment to the Probate Code which would take effect on January 1, 1997, and apply retroactively. Furthermore, each defendant claimed he first learned about the amendment a few days before sending the notice of rescission in October 1996 and he would not have agreed to the August 30 settlement had he known about the amendment.

Defendants contend this evidence raises triable issues of fact as to whether they and plaintiff acted under a mutual mistake of law or fact in agreeing to the settlement.

The mutual mistake was the parties' belief the tax consequences of distributions from the trust would be governed by Probate Code section 16081 as it existed when the malpractice action was filed in 1994 instead of under the 1996 amendment.[9] This mutual mistake, defendants contend, went to an essential element of the contract—settlement of defendants' potential liability for malpractice—and thereby entitled them to rescind.

The triable issues of fact include the date on which the defendants discovered the amendment to Probate Code section 16081 and, if this date was after August 30, 1996, whether defendants would have entered into the agreement had they known of the amendment at the time.

---

[7]*Stalnaker v. Boeing Co.* (1986) 186 Cal.App.3d 1291, 1302, and footnote 7 [231 Cal.Rptr. 323]. In the present case, defendants moved to amend their answer to include the rescission defense and Harris opposed the motion. The parties stipulated the motion to amend should be heard at the same time as their cross-motions for summary judgment. The trial court, however, never ruled on the motion, apparently accepting Harris's argument the motion was moot if the court granted his motion for summary judgment.

[8]2 Senate Final History (1995-1996 Reg. Sess.) 1253.

[9]Defendants submitted no evidence to support their alternative claim the mistake was unilateral on their part because Harris was aware of the 1996 amendment when he negotiated the settlement with defendants.

We conclude defendants are entitled to a trial on their rescission defense.

Under Civil Code section 1689, subdivision (b)(1) a party may rescind a contract if the party's consent was given by mistake. A mistake may be either one of fact[10] or law.[11]

A mistake of law arises from "[a] misapprehension of the law by all parties, all supposing that they knew and understood it, and all making substantially the same mistake as to the law . . . ."[12] According to defendants' declarations, this is what occurred here. When the parties entered into the settlement agreement on August 30th they were under the impression Probate Code section 16081 read as it had when the malpractice action was filed in 1994. Neither side knew that two weeks earlier the Governor had signed an amendment to that section.

Assuming the truth of defendants' declarations, their circumstances are analogous to those of the plaintiff in *Hannah v. Steinman*.[13] In *Hannah*, the plaintiff leased a vacant lot from the defendant for a three-year period with an option to extend the lease for an additional two years. Both parties contemplated the plaintiff would erect a wooden building on the lot; the construction of any other type of building being financially infeasible given the short lifespan of the lease. When the parties signed the lease neither knew that two days earlier the city had passed an ordinance which made it unlawful to construct a wooden building on the lot. It was undisputed that had the plaintiff known of the change in the law he would not have signed the lease because without the right to erect a wooden building the lot "was absolutely without value."[14] The Supreme Court held the plaintiff was entitled to rescind the lease because the parties' mistake as to the city's building ordinance was "material and goes to the very essence of the contract. . . . [¶] . . . [¶] . . . Without the right to construct a wooden building the tenant, so far as all practical considerations are concerned, was obtaining nothing."[15]

In a more recent case, *Home Bldg. & Loan Ass'n v. Perpetual Sav. & Loan*,[16] the Supreme Court of South Dakota held a material change in state law unknown to the defendant when he entered into a contract with the plaintiff entitled the defendant to rescind the contract. In this case Perpetual,

[10]Civil Code section 1577.
[11]Civil Code section 1578.
[12]Civil Code section 1578, subdivision 1.
[13]*Hannah v. Steinman* (1911) 159 Cal. 142 [112 P. 1094].
[14]*Hannah v. Steinman, supra,* 159 Cal. at page 145.
[15]*Hannah v. Steinman, supra,* 159 Cal. at pages 148, 150.
[16]*Home Bldg. & Loan Ass'n v. Perpetual Sav. & Loan* (S.D. 1983) 338 N.W.2d 456.

located in Rapid City, wanted to establish a branch office in Aberdeen but the law in effect at the time prohibited it from doing so. The only way Perpetual could operate in Aberdeen was to purchase the charter of a savings and loan company in that city. Perpetual thus began negotiations to purchase Home Building's stock so it could open an Aberdeen office under Home Building's charter. These negotiations led to a purchase agreement. Unbeknownst to Perpetual, the law prohibiting it from establishing a branch office in Aberdeen was repealed shortly before it commenced contract negotiations with Home Building. When Perpetual found out about the change in the law it notified Home Building it would not proceed with the purchase. Home Building sued for breach of contract and Perpetual defended on the ground it was entitled to rescind the contract based on a mistake of law. The trial court upheld Perpetual's right to rescind and the South Dakota Supreme Court affirmed. The court reasoned: "Since the purchase of Home Building's charter was solely for the purpose of opening a branch office, the change in this law was certainly material to the contract. The charter was the only asset of any value that Perpetual would have received under the contract."[17]

In the present case, the parties' mutual mistake regarding Probate Code section 16081 went to the very heart of their settlement agreement. If the amendment to the statute has the effect defendants claim it has then, under the trust as drafted by defendants, the trustees will suffer no adverse tax consequences from making distributions to the beneficiaries, and the settlement value of Harris's malpractice suit is obviously diminished.

The equities are also on the side of defendants. They allege they discovered the amendment approximately two months after its enactment and two months before it took effect. They acted promptly by giving notice of rescission a few days after discovering the amendment. If defendants are correct in their view the amendment will prevent any tax liability on the part of the trustees, then to the extent defendants' settlement payment is intended as indemnification for the trust or the trustees it constitutes a windfall to Harris.[18]

Harris argues defendants cannot rescind on the basis of a mistake of law because so far the "mistake" exists only in their own minds. Defendants' contention the amendment to Probate Code section 16081 moots the damage claimed in the malpractice action is based solely on their interpretation of

[17]*Home Bldg. & Loan Ass'n v. Perpetual Sav. & Loan, supra,* 338 N.W.2d at page 459.

[18]It appears from the post-August settlement negotiations a portion of the money was intended to indemnify the trustees for any tax liability they might incur in distributing funds from the trust, thereby removing their conflict of interest with the beneficiaries. The remainder of the settlement amount was intended to reimburse Harris for costs and attorney fees incurred in the litigation.

the amendment—an interpretation the Internal Revenue Service and the courts may or may not accept. Thus, this case is distinguishable from *Hannah* and *Home Bldg.*, discussed above, where the effect of the change in the law was clear and undisputed.

Harris's argument misses the point. Defendants' evidence tends to show they would not have entered into the settlement agreement with Harris had they known about the amendment to Probate Code section 16081. Regardless of whether defendants' interpretation of the amendment ultimately proves to be correct, they had enough confidence in their interpretation to rescind the settlement agreement and risk a finding of liability at trial.

Harris also contends defendants cannot rescind the agreement because any mistake on their part as to Probate Code section 16081 resulted from their own negligence. Defendants, he asserts, should have known about and tracked the proposed amendment to section 16081 since that statute went to the heart of Harris's claim for malpractice. Had defendants done so, they would have known the Governor signed the amendment into law before they agreed to the settlement. Defendants' failure to discover the amendment prior to settlement was particularly egregious, Harris argues, because Appel was a certified tax specialist and Berkowitz was a certified public accountant and attorney trained primarily in tax law.

Freedom from negligence, however, is not a requirement for rescission based on a mistake of law. Freedom from negligence is only required for rescission based on a mistake of fact.[19] Arguably the mistake at issue here was one of law—all parties supposing they knew the provisions of Probate Code section 16081.[20] In that case, negligence is not an issue and Harris's argument fails.

Even if we treat the parties' mistake as one of fact, Harris's argument still fails.

Harris cites no authority for his proposition a party to a lawsuit, even if he or she is a lawyer, has a duty to monitor all the bills introduced in the Legislature during the pendency of the suit lest one of them affect the merits of the claim or defense. Furthermore, assuming such a radical duty could be

---

[19]Compare Civil Code section 1577 (allowing rescission for mistake of fact only if "not caused by the neglect of a legal duty") with Civil Code section 1578 (no reference to negligence).

[20]See Civil Code section 1578, subdivision 1.

established, its breach would be no more than ordinary negligence and ordinary negligence does not constitute "neglect of a legal duty" as that term is used in Civil Code section 1577.[21] ■ To bar rescission, the party seeking to rescind must be guilty of gross negligence—"the want of even scant care or an extreme departure from the ordinary standard of conduct."[22] It is well settled, however, "the negligent failure of a party to know or discover facts as to which both parties are under a mistake does not preclude rescission or reformation because of the mistake."[23]

■ Finally, Harris argues defendants should bear the risk of a change in the tax law. Defendants drafted the August 30 memorandum, yet they included no provision with respect to future legislation affecting their liability. As tax attorneys, they should have been aware of the constant revisions in this field of law.[24]

We reject Harris's argument for three reasons. As we have indicated in our discussion of negligence above, placing the risk of loss solely on defendants imposes an unfair burden on them as litigants. Furthermore, unlike *Mosher v. Mayacamas Corp.*, relied on by Harris, the contract here was still in its executory stage when defendants gave notice of rescission and the parties could be returned to the status quo ante without having to undo any performance by either side. Finally, although defendants did not discover the amendment to Probate Code section 16081 before they entered into the settlement agreement, they discovered it promptly thereafter and before changes in the law took effect.

For the reasons set forth above, we see no inequity to Harris in allowing defendants to rescind the settlement agreement if they can establish the facts they have asserted in their declarations.

III. *The Trial Court Properly Sanctioned Defendants for Filing Motions Which Only Repeated a Claim the Court Had Rejected.*

■ Although we have ruled defendants' rescission defense entitles them to reversal of the summary judgment for plaintiff, our ruling does not

---

[21]*Sun 'N Sand, Inc. v. United California Bank* (1978) 21 Cal.3d 671, 701 [148 Cal.Rptr. 329, 582 P.2d 920].

[22]*Van Meter v. Bent Construction Co.* (1956) 46 Cal.2d 588, 594 [297 P.2d 644].

[23]*Van Meter v. Bent Construction Co., supra,* 46 Cal.2d at page 594.

[24]Compare *Mosher v. Mayacamas Corp.* (1989) 215 Cal.App.3d 1, 6 [263 Cal.Rptr. 373] (rescission denied because defendant should have known value of property could be affected by future tax legislation).

negate the sanctions properly imposed on defendants for repeatedly arguing a claim the trial court had rejected.

Following the trial court's order granting summary judgment to plaintiff on his breach of contract action, defendants filed a motion for reconsideration solely on the ground plaintiff had not established he performed under the contract by providing the releases called for in the agreement. Defendants maintain plaintiff's performance is a necessary element in a breach of contract action and therefore Harris was not entitled to summary judgment.[25] The trial court denied defendants' motion for reconsideration and also denied Harris's motion for sanctions.

The following month defendants filed motions to vacate the judgment and for new trial, again arguing only Harris's nonperformance of the contract. Finding "[n]othing I've read in these two motions is any different, legally or factually, from the previous motions," the trial court denied the motions and imposed sanctions on defendants in the amount of $2,750 for the motion to vacate and $2,000 for the motion for new trial.

■ Under section 128.5 a trial court is authorized to order a party, the party's attorney, or both to pay any reasonable expenses, including attorney fees, incurred by another party as a result of "bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay."[26] A bad faith action or tactic is considered "frivolous" if it is "totally and completely without merit."[27] To be entitled to sanctions the moving party must show the action or tactic was in bad faith *and* frivolous or brought solely to cause unnecessary delay.[28]

We review a sanction award for abuse of discretion.[29]

■ As previously noted, defendants' motion for reconsideration was based on the contention Harris had not submitted proof of his performance under the contract and therefore he had not established an essential element of his cause of action for breach of contract. The trial court properly denied this motion because it was "totally and completely without merit."

---

[25] A plaintiff seeking summary judgment must prove "each element of the cause of action entitling the party to judgment on that cause of action." (§ 437c, subd. (*o*)(1).)

[26] This action was filed prior to January 1, 1995; therefore section 128.5, not 128.7, is the applicable sanction statute. The trial court's order does not specify to whom its sanction order applies, defendants, defendants' attorneys or both. The order does state, however, "[p]laintiff's request for sanctions is therefore granted." Because plaintiff's request for sanctions was aimed at defendants, not their attorneys, we will assume the trial court intended to sanction defendants only.

[27] Section 128.5, subdivision (b)(2).

[28] *Dolan v. Buena Engineers, Inc.* (1994) 24 Cal.App.4th 1500, 1506 [29 Cal.Rptr.2d 903].

[29] *Dolan v. Buena Engineers, Inc., supra*, 24 Cal.App.4th at page 1504.

Harris's lack of performance was not a bar to summary judgment in this case because the evidence is undisputed the parties were negotiating the language of the releases when defendants took the settlement agreement "off the table," thereby excusing further performance by Harris.[30]

Defendants argue they did not "prevent" Harris from performing his part of the bargain. He could have signed one of the versions of the releases drafted before the agreement was taken "off the table." There is no merit to this argument. Harris need not have been physically or legally prevented from performing in order for his performance to be excused. It is enough to excuse his performance that defendants repudiated the contract before his performance was due.[31] Furthermore, Harris had as much right to negotiate the terms of the releases as defendants had. The parties were engaged in such negotiations when defendants repudiated the contract. Defendants did not claim Harris failed to negotiate in good faith. Therefore, defendants' breach of the contract excused Harris from providing the promised releases.

Disregarding the trial court's previous ruling rejecting their nonperformance argument, defendants proceeded to file motions to set aside the judgment and for new trial which were not "any different, legally or factually, from the previous motions." The trial court could reasonably conclude defendants' continuous filing of motions which only repeated the same claim the trial court had previously rejected constituted bad faith under section 128.5. The court could infer defendants knew their motions lacked merit—at least in the court's view—yet continued to pursue their claim for some ulterior motive.[32]

Defendants contend the trial court failed to "recite in detail the conduct or circumstances justifying the order" as required by section 128.5, subdivision (c). We disagree.

In its minute order the court states: "[T]here is nothing significantly legally or factually different in either of the above captioned motions that the court has not heard/ruled on previously." We find this explanation for the

---

[30]Civil Code section 1440 states: "If a party to an obligation gives notice to another, before the latter is in default, that he will not perform the same upon his part, and does not retract such notice before the time at which performance upon his part is due, such other party is entitled to enforce the obligation without previously performing or offering to perform any conditions upon his part in favor of the former party."

[31]Civil Code section 1440, quoted *ante*, footnote 30.

[32]See *In re Luckett* (1991) 232 Cal.App.3d 107, 110 [283 Cal.Rptr. 312]; *Summers v. City of Cathedral City* (1990) 225 Cal.App.3d 1047, 1073 [275 Cal.Rptr. 594].

court's order sufficient to apprise defendants and this reviewing court of the reasons why sanctions were imposed.[33]

We conclude, therefore, the trial court did not abuse its discretion in awarding sanctions against defendants under section 128.5.

### DISPOSITION

The judgment for plaintiff is reversed. The order awarding sanctions against defendants is affirmed. Each side is to bear its own costs on appeal.

Woods, J., and Perluss, J., concurred.

A petition for a rehearing was denied March 5, 2002, and the opinion was modified to read as printed above.

---

[33]Compare *Javor v. Dellinger* (1992) 2 Cal.App.4th 1258, 1262 [3 Cal.Rptr.2d 662]; *Jansen Associates, Inc. v. Codercard, Inc.* (1990) 218 Cal.App.3d 1166, 1171 [267 Cal.Rptr. 516].