Filed 10/14/15  WooriChemtech Co. v. EPC Technologies CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| WOORICHEMTECH CO., LTD., | |
| Cross-complainant and Appellant, | E061174 |
| v. | (Super.Ct.No. CIVRS1009301) |
| EPC TECHNOLOGIES, INC. et al., | OPINION |
| Cross-defendants and Respondents. | |

APPEAL from the Superior Court of San Bernardino County.  Gilbert G. Ochoa, Judge.  Affirmed.

Kim, Shapiro, Park & Lee and Paul Park for Cross-complainant and Appellant, WooriChemtech Co. Ltd.

Lee Counsel and Ginam Lee for Cross-defendant and Respondent, EPC Technologies, Inc.

Price, Parkinson & Kerr and Steven W. Garff for Cross-defendant and Respondent, Basic Research.

No appearance for Cross-defendant and Respondent, Kwangwon USA, Inc.

1

# I

## INTRODUCTION[1]

Appellant WooriChemtech Co. Ltd. (Woori) and respondents EPC Technologies, Inc. and related parties (EPC), Kwangwon USA, Inc. and related parties (Kwangwon), and Basic Research, LLC. (Basic) became embroiled in a dispute over the ownership, acquisition and distribution of StriVectin skin care products. The parties attempted to settle their disputes and litigation, to no avail.

Woori appeals the trial court order dismissing EPC and Basic from the action after granting Basic, Kwangwon, and EPC's motion to enforce a written settlement agreement between Woori and EPC, entered on May 18, 2013 (2013 settlement agreement). Woori argues EPC and Woori mutually rescinded the settlement agreement. Therefore it is unenforceable. Woori also argues the trial court erred in refusing to consider proffered extrinsic evidence when reviewing and construing the terms of the 2013 settlement

---

[1] EPC and Basic request this court to judicially notice (1) a certified copy and translation of "Gist of Defense Argument" for Hwa Youn Seol, filed on May 22, 2013, in the Southern Branch of the Seoul District Court and (2) a certified copy and translation of "Final Statement of Defendant" Seol Hwa Youn, filed on June 7, 2013, in the Southern Branch of the Seoul District Court. (Evid. Code, § 452, subd. (f).) EPC and Basic acknowledge the documents were not presented to the trial court in this case but argue this court nevertheless should consider them because the documents refute Woori's contention that the 2013 settlement agreement was rescinded. Woori indicates in the documents that the 2013 settlement agreement was an enforceable agreement.

EPC's request for judicial notice is denied. Although the documents show that Woori and Seol believed the 2013 settlement agreement was valid and enforceable, the documents were submitted in a different jurisdiction (in a court in South Korea) and were not presented to the trial court in the instant case.

agreement. In addition, Woori asserts Basic and Kwangwon do not have standing to enforce the settlement agreement between EPC and Woori.

We conclude substantial evidence supports the trial court's findings Woori and EPC entered into a valid, enforceable written settlement agreement and the parties to the agreement did not mutually rescind the agreement. The trial court therefore properly granted enforcement of the 2013 settlement agreement, which required Woori to dismiss its claims with prejudice. We also reject Woori's contention the trial court erred in not considering extrinsic evidence, and find no merit to Woori's standing challenge. Regardless of whether Basic and Kwangwon had standing to bring the motion to enforce settlement, EPC, which joined in the motion, had standing to bring the motion. We affirm the judgment.

II

FACTS AND PROCEDURAL BACKGROUND

Klein-Becker USA, LLC (Klein-Becker) manufactures and markets StriVectin skin care products. Basic is a distributor of StriVectin products. In 2005, Basic and Klein-Becker (collectively BKB) and Woori entered into an agreement entitled, "International Distributor Agreement" (2005 IDA), permitting Woori to distribute StriVectin products in the Republic of Korea. Various disagreements arose from the 2005 IDA. In December 2008, BKB and Woori entered into a settlement agreement and mutual release (2008 Settlement Agreement), in which BKB agreed to provide Woori with a $740,000 credit for the purchase of BKB products.

3

Thereafter, Woori and Basic entered into an agreement entitled, Additions/Modifications to Standard Purchase Agreement (A/M Agreement), which stated Woori ordered, and Basic would supply to Woori, $516,420 worth of BKB's StriVectin products. Payment for the products would be charged against the $740,000 credit under the 2008 Settlement Agreement. Under the A/M Agreement, Woori had a remaining credit balance of $223,580. Woori received the ordered products from Basic.

Because of Woori's delay in signing a new distributorship agreement and various violations of the A/M Agreement, in February 2009, Basic notified Woori that Basic would not enter into another distributorship agreement with Woori and was looking for other distributors for Korea. Basic demanded Woori immediately cease and desist from selling BKB products, provide an accounting of disposition of the products, and transfer the website domain to Basic.

The president of Woori, Hwa Youn Seol (Seol), encouraged EPC to enter into a distributorship agreement with BKB. BKB selected EPC as a new distributor. In March 2009, EPC and BKB entered into an IDA (2009 IDA) in which EPC became the sole authorized distributor of BKB's products for Asia Pacific Countries, including Korea and Japan. The 2009 IDA stated EPC replaced Woori in the 2008 Settlement Agreement, with the $740,000 credit transferred to EPC, and EPC was given the right to dispose of the products Woori had received or return them to Basic. The remaining credit was also transferred to EPC.

In 2009, Woori executed a Confirmation of Assignment (COA), which provided that Woori transferred to EPC all rights to the remainder of the StriVectin products in

4

Woori's possession, and authorized EPC to sell or dispose of the products. In May 2009, pursuant to the COA, EPC moved Woori's remaining products to Kwangwon's warehouse.

In July 2009, BKB transferred its StriVectin cosmetics assets to StriVectin Operating Company, Inc. A dispute arose between EPC, BKB, and StriVectin Operating Company regarding rights and obligations under the 2009 IDA. The parties settled and agreed to enter into a new IDA (2011 IDA), which remained in effect until June 2012. In June 2012, StriVectin Operating Company authorized EPC to take civil and criminal legal action on behalf of StriVectin Operating Company to protect and prosecute infringements of StriVectin Operating Company's intellectual property registered in Korea. Such infringements included Woori and Seol's tampering with the expiration dates on the StriVectin products and selling expired products in Korea.

By impersonating Gun Choon Lee (G.C. Lee), the president and chief executive officer (CEO) of EPC, Seol, on behalf of Woori, caused the remaining StriVectin products stored at the Kwangwon warehouse in Ontario, California, to be released and moved to Korea in December 2009. Woori sold the products in Korea by altering the expiration dates on the products, interfering with business relations for selling the remaining products, and making various misrepresentations regarding the products. Upon discovering Woori and Seol's misconduct, EPC reported the misconduct, resulting in the court in Korea finding Woori and Seol liable and fining them for the misconduct.

In August 2010, EPC filed a complaint against Kwangwon in connection with the release of StriVectin products to Woori. Kwangwon cross-complained against EPC and

5

Woori. Kwangwon and EPC settled and dismissed their claims against each other in December 2012. In April 2013, Woori filed an amended cross-complaint against Kwangwon, EPC, and Basic regarding disputed possession, storage, and distribution of StriVectin products.

**2013 Settlement Agreement**

In May 2013, Seol and Woori majority shareholder, Sung Pan Huh (Huh), met in Korea with G.C. Lee, EPC's president and CEO, and Heung Young Sohn, chairman of EPC, for the purpose of resolving their disputes. Seol requested settlement of all claims and EPC to release a provisional attachment against his property. On May 18, 2013, EPC and Woori entered into a written settlement agreement drafted by Huh (2013 settlement agreement). The parties agreed that (1) Woori would dismiss all claims against EPC and Basic, filed in the United States; (2) EPC would thereafter release the provisional attachment, "withdraw" the civil case against Woori in Korea, and request termination of the criminal trial against Seol for obstruction of business; (3) EPC would cooperate in resolving "peacefully" the lawsuit between Woori and Kwangwon; and (4) EPC and Woori would not file any civil or criminal claims regarding StriVectin.

Woori filed opposition to the motion to enforce settlement. In a supporting declaration, Andrew S. Kim, attorney for Woori and Seol, stated that, upon receiving a copy of the 2013 settlement agreement, Kim called Minhee Suk, attorney for EPC, and they discussed the settlement agreement terms. Thereafter, in an email dated May 29, 2013, Suk stated that under the 2013 settlement agreement, Woori was required to dismiss its lawsuit against EPC with prejudice, before EPC would dismiss the Korean

6

cases and assist with the Kwangwon matter. Suk further stated that if Woori did not dismiss the case soon, the "'agreement will be off the table'" if Woori did not accept EPC's position.

Kim called Suk and told her he objected to her position. On May 30, 2013, Kim sent Suk a letter memorializing their telephone discussion, in which Kim stated that Woori offered to "dismiss the parties without prejudice initially, and upon completion of your client's obligations, to dismiss the parties with prejudice." Kim also stated Suk had "clearly stated that [EPC's] position on the issue of dismissal is that the case must be dismissed with prejudice before they will move forward with their undertakings, and that if we do not accept this, the settlement agreement 'will be off the table.'"

On June 4, 2013, Kim sent Suk an email stating that Woori "'will accept that the prior understanding regarding settlement between [EPC] and our client is now "off the table,"'" and that Woori would proceed with litigating the case. In response, Suk stated in a discovery meet-and-confer letter emailed on June 7, 2013, that "for the last several weeks, WooriChemTech and EPC Parties engaged in discussions to arrive at a possible pre-trial resolution. However, that discussion broke down on June 4, 2013." EPC therefore requested additional time to respond to discovery. The parties continued litigating their dispute, including EPC filing discovery motions, and Woori and EPC filing demurrers to cross-complaints.

In October 2013, during mediation, Basic and Kwangwon first learned of the 2013 settlement agreement between EPC and Woori. During the deposition of G.C. Lee of

7

EPC, Basic first learned of the details of the 2013 settlement agreement, which included dismissing Woori's claims against Basic.

In November 2013, Kwangwon's attorney, Boksoon Christine Park, emailed counsel for EPC and Basic, inquiring as to whether EPC and Basic were interested in bringing a motion to enforce the 2013 settlement agreement. Park stated in her email that she believed there was sufficient evidence to show that the parties to the 2013 settlement agreement intended that Woori's claims would be dismissed with prejudice.

In response, EPC's attorney, Ginam Lee, emailed Park, confirming that EPC did not intend to "enforce the settlement agreement at this time," but would not oppose such a motion if brought by Basic and Kwangwon.

**Motion to Enforce 2013 Settlement Agreement**

In December 2013, Basic and Kwangwon filed a motion to enforce the 2013 settlement agreement under Code of Civil Procedure section 664.6.[2] EPC joined in the motion. Woori filed opposition, arguing the agreement was mutually rescinded by the parties in June 2013.

During the hearing on the motion to enforce settlement, the trial court noted that EPC had acted like it believed there was no enforceable settlement, because EPC continued with expensive discovery. EPC's attorney explained that, although it believed the 2013 settlement agreement was enforceable, EPC had no choice but to proceed with costly litigation because Woori refused to recognize the agreement and the dispute

---

[2] Unless otherwise noted, all statutory references are to the Code of Civil Procedure.

8

involved $6 million in damages. Basic's attorney added that section 644.6 provides for enforcement of a settlement agreement regardless of whether the parties agreed to the terms of the settlement.

Kwangwon's attorney argued it was clear from Seol's deposition testimony that Woori and EPC intended to resolve the disputed matter through the 2013 settlement agreement. Kwangwon's attorney believed that Woori did not comply with the 2013 settlement agreement by refusing to dismiss its action, and EPC had no recourse but to litigate. Woori's attorney argued that the actions of the parties, including emails and discovery, showed that the parties rescinded the 2013 settlement agreement. Woori's attorney also asserted that Kwangwon and Basic were third party beneficiaries of the 2013 settlement agreement between EPC and Woori, and did not have any rights unless there was an enforceable settlement agreement. In addition, Woori's attorney argued the agreement was ambiguous regarding a critical term: dismissal of Woori's claims.

The trial court concluded EPC and Woori entered into an enforceable settlement agreement, although the court was concerned that the parties had proceeded as if there was no enforceable agreement. The court added that the agreed dismissal had to have been with prejudice as a practical matter. The court noted that it should not consider any verbal agreements outside the 2013 settlement agreement. The trial court granted Basic, Kwangwon, and EPC's motion to enforce settlement. On May 7, 2014, the court entered an order (1) granting the motion to enforce settlement, (2) dismissing EPC and Basic from Woori's first amended cross-complaint, (3) dismissing EPC's cross-complaint, (4) ordering EPC to release the lien attached to Seol's property, and (5) ordering EPC to

9

withdraw its lawsuits filed in Korea against Woori.  Woori filed a notice of appeal of the May 7, 2014 order of dismissal .

III

NONRESCISSION OF 2013 SETTLEMENT AGREEMENT

Woori does not dispute that the parties entered into an enforceable settlement agreement.  Rather, Woori argues that, "assuming there existed an enforceable agreement at one point in time," the 2013 settlement agreement was rescinded and therefore unenforceable under section 664.6.  The trial court concluded there was insufficient evidence the agreement was rescinded.  We agree.

Section 664.6 was enacted to provide a summary procedure for enforcing a settlement agreement without the need for a new lawsuit.  (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 809 (*Weddington*).)  In ruling on the motion, the trial court acts as a trier of fact.  "It must determine whether the parties entered into a valid and binding settlement.  To do so it may receive oral testimony in addition to declarations."  (*Kohn v. Jaymar-Ruby, Inc.* (1994) 23 Cal.App.4th 1530, 1533.)  On appeal, this court then determines whether the trial court's ruling was supported by substantial evidence.  (*Ibid.*)  Although a judge hearing a section 664.6 motion may receive evidence, determine disputed facts, interpret terms of settlement agreement, and enter the terms of a settlement agreement as a judgment, a judge is not authorized under section 664.6 "to *create* the material terms of a settlement, as opposed to deciding what terms *the parties themselves* have previously agreed upon."  (*Weddington,* at p. 810.)

10

In order for a settlement agreement to be enforceable pursuant to the summary procedures of section 664.6, a settlement agreement must be entered into either orally in court or in a writing signed by the parties. (*Weddington, supra,* 60 Cal.App.4th at p. 810.) Here, it is undisputed Woori and EPC entered into a written, signed settlement agreement addressing their dispute over ownership, possession and distribution of StriVectin products. Woori argues the 2013 settlement agreement, however, was unenforceable and must be rescinded because it did not unambiguously address the material term of whether Woori was required to dismiss its claims with or without prejudice.

A. *Mutual Consent of All Unambiguous Material Terms*

A settlement agreement is a contract governed by legal principles applicable to contracts generally. (*Weddington, supra,* 60 Cal.App.4th at p. 810.) Consent is an essential element of any contract. (Civ. Code, § 1550; *Weddington,* at p. 811.) Consent must be mutual. (Civ. Code, § 1565; *Weddington,* at p. 811.) "'Consent is not mutual, unless the parties all agree upon the same thing in the same sense.' (Civ. Code, § 1580; see also Civ. Code, § 1636 [contracts must be enforced according to the 'mutual intention of the parties as it existed at the time of contracting.'])" (*Weddington,* at p. 811.)

Here, Woori argues EPC and Woori did not agree on whether Woori's claims would be dismissed with prejudice. Whether Woori and EPC mutually agreed dismissal of Woori's claims would be with prejudice "is determined by objective rather than subjective criteria, the test being what the outward manifestations of consent would lead a reasonable person to believe." (*Meyer v. Benko* (1976) 55 Cal.App.3d 937, 942-943;

11

*Weddington, supra,* 60 Cal.App.4th at p. 811.) The parties' outward manifestations must show that the parties all agreed "upon the same thing in the same sense." (Civ. Code, § 1580.) If there is no evidence of assent to the "same thing" by both parties, then there is no mutual consent to contract and no contract formation. (Civ. Code, §§ 1550, 1565 and 1580; *Weddington, supra,* 60 Cal.App.4th at p. 811.)

In addition, "[i]n order for acceptance of a proposal to result in the formation of a contract, the proposal 'must be sufficiently definite, or must call for such definite terms in the acceptance, that the performance promised is reasonably certain.' [Citation.] A proposal '"cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain. [¶] . . . The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy."' [Citation.] If, by contrast, a supposed 'contract' does not provide a basis for determining what obligations the parties have agreed to, and hence does not make possible a determination of whether those agreed obligations have been breached, there is no contract. [Citations.]" (*Weddington, supra,* 60 Cal.App.4th at p. 811.)

Here, after entering into the 2013 settlement agreement, the parties to the agreement disagreed on whether the agreement required dismissing Woori's claims with prejudice. Nevertheless, the 2013 settlement agreement as a whole is sufficiently clear and definite as to the material terms, including that Woori is required to dismiss its claims with prejudice. This can be reasonably inferred from language in the agreement requiring Woori to "withdraw" or dismiss its claims and language prohibiting Woori from refiling its claims or filing any new claims. In effect, these terms are the equivalent

12

of requiring dismissal with prejudice. Woori could not initially dismiss its claims without prejudice and then later return to court and dismiss them with prejudice, after the court no longer has jurisdiction over the matter.

We therefore conclude that, even though, after executing the 2013 settlement agreement, the parties disagreed as to whether dismissal of Woori's claims must be with prejudice, the terms of the 2013 settlement agreement are sufficiently clear that Woori must dismiss its claims with prejudice. Greater detailed elaboration of the dismissal term may have been helpful for purposes of avoiding disagreement, but the absence of such elaboration does not require rescission or void the entire agreement. (*Weddington, supra,* 60 Cal.App.4th at p. 816.)

*B. Insufficient Evidence of Rescission*

We also reject Woori's contention EPC and Woori mutually rescinded the 2013 settlement agreement. There is substantial evidence refuting this proposition. "Factual determinations made by a trial court on a section 664.6 motion to enforce a settlement must be affirmed if the trial court's factual findings are supported by substantial evidence. [Citations.] Other rulings are reviewed de novo for errors of law." (*Weddington, supra,* 60 Cal.App.4th at p. 815.)

"The question of whether a contract has been cancelled, rescinded or abandoned is a mixed question of law and fact [citations] which is addressed to the trial court [citations] and the finding of the trial court will be upheld if it is supported by substantial evidence." (*Ross v. Frank W. Dunne Co.* (1953) 119 Cal.App.2d 690, 698-699 (*Ross*).)

13

Woori argues that Woori and EPC's correspondence and conduct establishes that they rescinded the 2013 settlement agreement, expressly and impliedly. "'An abandonment of a contract may be implied from the acts of the parties and this may be accomplished by the repudiation of the contract by one of the parties and by the acquiescence of the other party in such repudiation. [Citation.] It is not necessary that the parties say, in so many words, that they do mutually rescind the contract; rescission may be proved by other words and acts. [Citation.]'" (*Lubin v. Lubin* (1956) 144 Cal.App.2d 781, 796.) The intent to abandon or rescind must be mutual. (Civ. Code, § 1689, subd. 5; *Lubin,* at p. 796.)

Woori contends EPC and Woori mutually rescinded the 2013 settlement agreement on June 4, 2013. Woori asserts this rescission is established by (1) an email from Suk of EPC, on May 29, 2013; (2) an email from Kim of Woori, on June 4, 2013; and (3) a letter dated June 7, 2013, from EPC's attorneys, Suk, and Ginam Lee of EPC. According to Woori, the parties rescinded the 2013 settlement agreement because they disagreed on whether, under agreement, the dismissal of claims would be with prejudice or without prejudice. Woori argues this was a key term of the 2013 settlement agreement, and disagreement on the key term resulted in the parties rescinding the agreement.

The correspondence Woori relies on for the proposition Woori and EPC rescinded the 2013 settlement agreement does not state that the parties rescinded the 2013 settlement agreement. The correspondence merely indicates that the attorneys for Woori and EPC disagreed as to whether Woori was required to dismiss its claims with prejudice.

14

Suk, EPC's attorney, stated in her May 29, 2013 letter that Woori was required to dismiss its claims with prejudice, and if it did not, the 2013 settlement agreement would "be off the table." Suk's May 29, 2013 email does not expressly or even impliedly rescind the 2013 settlement agreement. Suk's email can be reasonably construed as Suk warning Woori that, if Woori did not comply with the terms of the 2013 settlement agreement, EPC would proceed with litigation because of Woori's noncompliance.

Kim's letter on May 30, 2013, also does not state or indicate that either party rescinded the 2013 settlement agreement. Kim's email response on May 30, 2013 on behalf of Woori, states: "We have offered to dismiss the parties without prejudice initially, and upon completion of your client's obligations, to dismiss the parties with prejudice." Kim further stated he would inform Woori of Suk's position on the matter of dismissal and within a few days convey to Suk Woori's response.

Kim's additional email to Suk on June 4, 2013, advises Suk that Woori's position on dismissal had not changed. Therefore Woori would "accept that the prior understanding regarding settlement between your client and our client is now 'off the table' and that we will proceed with the case without further interruption." Kim's June 4, 2013 email does not expressly or impliedly establish mutual rescission. Rather, the email indicates that Woori and EPC came to an impasse on construing the dismissal term in the 2013 settlement agreement. Woori was not willing to dismiss its claims with prejudice until it first dismissed them without prejudice, which was not possible procedurally under the terms of the 2013 settlement agreement.

15

Suk's letter to Woori's attorneys, dated June 7, 2013, also does not establish that the parties rescinded the 2013 settlement agreement. The June 7, 2013 letter is a discovery meet-and-confer letter. Suk requests additional time to respond to discovery because, "for the last several weeks, WooriChemTech and EPC Parties engaged in discussions to arrive at a possible pre-trial resolution. However, that discussion broke down on June 4, 2013." This does not constitute or confirm mutual rescission of the 2013 settlement agreement. Suk merely acknowledges Woori and EPC were attempting to resolve their dispute over dismissal of Woori's claims but were unsuccessful in doing so.

Subsequent correspondence between attorneys for Kwangwon, EPC, and Basic in November 2013, also indicates EPC did not rescind the 2013 settlement agreement, even though the parties resumed litigation. On November 1, 2013, Kwangwon's attorney, Park, emailed counsel for EPC and Basic, asking if EPC and Basic wanted to file a motion to enforce the 2013 settlement agreement. Park stated she believed there was a sufficient basis for bringing such a motion. In response, EPC's attorney, Ginam Lee, stated that EPC did not intend to "enforce the settlement agreement *at this time*" (emphasis added)," but he would not oppose such a motion if brought by Basic and Kwangwon.

Woori cites *Harris v. Rudin, Richman & Appel* (2002) 95 Cal.App.4th 1332 for the proposition EPC gave notice of rescission by declaring that EPC was taking the 2013 settlement agreement "off the table" if Woori refused to accept EPC's position on dismissal. Woori's reliance on *Harris* is misplaced. In *Harris*, the court held the trial

16

court erred in granting the defendants' motion for summary judgment on the plaintiff's breach of contract complaint. The underlying contract was an oral settlement agreement and promise to execute a formal written settlement agreement, which was never consummated. The defendants attempted to back out of the settlement after discovering legislation had recently been enacted, relieving the defendants of liability. The *Harris* court concluded there were triable issues of fact as to whether the defendants were entitled to rescind their settlement agreement based on mutual mistake of law and fact. (*Id.* at p. 1338.) Therefore the defendants were entitled to a trial on their rescission defense to the plaintiff's breach of contract claim. (*Id.* at p. 1339.)

*Harris* is not on point. Here, there was an enforceable written settlement agreement, whereas in *Harris*, the written agreement had not been executed when the defendants gave notice of rescission. (*Harris, supra,* 95 Cal.App.4th at p. 1342.) In addition, in the instant case there was no evidence the parties expressly rescinded the agreement and there was no evidence EPC and Woori executed the 2013 settlement agreement based on a mistake of law or fact. There was only a dispute after execution of the agreement regarding a term of the written agreement. In *Harris*, the defendant expressly rescinded the oral settlement agreement whereas, here, the evidence does not show that either party expressly rescinded the 2013 settlement agreement. The issue in the instant case is whether there was a mutual rescission, whereas in *Harris*, the issue was whether there was a rescission based on a mistake of law or fact. In addition, the instant case also does not involve a summary judgment motion. It concerns a motion to enforce settlement, in which the trial court was required to make findings of fact. Although there

17

were triable issues of fact as to rescission, the trial court appropriately concluded, based on substantial evidence, that the parties to the 2013 settlement agreement did not mutually rescind the agreement.

In *Ross, supra,* 119 Cal.App.2d 690, involving a contract dispute, the court rejected the defendant's arguments, which are similar to those raised in the instant case by Woori.  In *Ross*, the parties entered into a written, signed contract, in which the defendant, a manufacturer of paint products, agreed to supply the plaintiff, a distributor, with paint products and not interfere in the plaintiff's relationship with another distributor.  The contract further stated the plaintiff would cover a specified territory and the defendant would cooperate in the promotion of the plaintiff's sales.  (*Id.* at p. 695.)  The defendant agreed to provide a written distributorship agreement but failed to do so.  The plaintiff sued the defendant for breach of contract.  The plaintiff alleged the defendant had granted the plaintiff an exclusive distributorship in a specified territory and breached the contract by refusing to execute the distributorship agreement, refusing to fill further orders, and refusing to comply with all terms of the contract.  (*Id.* at p. 694.)

The defendant argued in *Ross* that the initial written contract was not a valid, binding contract because it was an agreement to agree.  It was executory and therefore lacking in mutuality and not binding.  (*Ross, supra,* 119 Cal.App.2d at p. 696.)  The *Ross* court rejected the defendant's position, concluding the contract terms were clear, definite, and certain.  The court noted there was a dispute among the parties over the meaning of the contract term, "distributors cost."  The court nevertheless concluded the contract was sufficiently clear and definite, explaining that the words, "distributors cost" "may be

considered 'technical,' and technical words are to be interpreted as usually understood by persons in the profession or business to which they relate, unless clearly used in a different sense. [Citations.] When words having a technical or local significance appear, evidence explanatory of them is admissible, not for the purpose of adding to or qualifying, or contradicting the contract, but for the purpose of ascertaining it, so as to enable the court to interpret it according to the actual intention of the parties, and law and usage of the place where it is to be performed. [Citations.]" (*Id.* at p. 697.) The trial court heard testimony explaining the disputed contract language and held the contract was valid, indicating the trial court found the contract terms were sufficiently definite and certain. The *Ross* court upheld the trial court's determination, noting that the *Ross* court "should not disturb this determination, since the record supports it." (*Ibid.*)

Here, Woori and EPC executed a written contract, thereafter disputed language in the contract, and the trial court considered the contract terms as a whole in determining the meaning of the disputed language. Here, unlike in *Ross*, the disputed language referring to immediate "withdrawal" of Woori's claims against EPC, is not a legal, technical phrase. And even assuming it is, the court was more than qualified to construe the legal meaning of the language. This court will not disturb the trial court's determination that the disputed language required dismissal of Woori's claims with prejudice, since the record and contract as a whole support it. (*Ross, supra,* 119 Cal.App.2d at p. 698.)

The court in *Ross* also rejected the defendant's argument that the contract was cancelled, mutually rescinded or abandoned. (*Ross, supra,* 119 Cal.App.2d at p. 698.)

19

The *Ross* court acknowledged there was conflicting evidence upon the issue and noted the parties terminated their dealings with each other, but they "did so only because appellant failed and refused to live up to the agreement.  This does not appear to amount to a mutual cancellation, rescission or abandonment." (*Id.* at p. 699.)  The *Ross* court noted it was not at liberty to reject the trial court's finding there was no mutual cancellation, rescission or abandonment, because the determination involved a question of fact.  (*Ibid.*)

Likewise, here, the trial court considered the evidence before it of whether the parties mutually rescinded the 2013 settlement agreement and found there was no mutual rescission of the agreement.  Substantial evidence supports that factual determination.  This court must give deference to that finding and accordingly upholds the trial court's ruling granting enforcement of the 2013 settlement agreement.

*C.  Extrinsic Evidence*

Woori argues the trial court erred in refusing to consider extrinsic evidence when ruling on the motion to enforce the settlement.  This contention is based on the trial court's statements during the hearing on the motion that, "coupled with reading the four corners of the agreement, notwithstanding any verbal agreements outside of that, the Court should not be considering those verbal agreements . . . ."

Extrinsic evidence is admissible to establish the meaning of a contract term not "'only "where it is obvious that a contract term is ambiguous, but also to expose a latent ambiguity." [Citation.]' [Citation.]" (*Steller v. Sears, Roebuck & Co.* (2010) 189 Cal.App.4th 175, 183 (*Steller*).)  When the language of a settlement agreement is

20

ambiguous, the trial court is required to consider extrinsic evidence of the parties' intent. (*Ibid.*) "'Where a word or a phrase used in a contract can reasonably be understood in more than one way, the court must admit and consider extrinsic evidence to determine what the parties actually intended the word or phrase to mean. [Citation.] The court should not limit the "determination of the meaning of a written instrument to its four-corners merely because it seems to the court to be clear and unambiguous" when the language is reasonably subject to multiple interpretations. [Citation.]' [Citation.]" (*Ibid.*)

Here, the contract language was not reasonably subject to multiple interpretations. Although the parties disputed the meaning of the language requiring Woori to dismiss its claims, the trial court reasonably concluded that, when considering the 2013 settlement agreement as a whole, there was only one reasonable interpretation: that dismissal of Woori's claims was with prejudice. Otherwise the terms requiring immediate dismissal of Woori's claims and precluding refiling those claims or filing new claims would be meaningless. Because the agreement language was clear and unambiguous in this regard, the trial court was not required to consider extrinsic evidence. However, it appears from the record the trial court considered extrinsic evidence, including the parties' correspondence and testimony regarding the 2013 settlement agreement.

Even if the trial court erred in excluding extrinsic evidence when construing the 2013 settlement agreement, this does not require reversal. "'[R]eversal should be ordered only after a thorough review of the entire record to determine if it is reasonably probable that a result more favorable to [appellant] would be reached in the absence of the error.

21

Otherwise, such error will be found harmless. [Citation.]' [Citation.]" (*Steller, supra,* 189 Cal.App.4th at p. 184.) Woori has not shown that it presented or could have presented admissible extrinsic evidence, which the trial court failed to consider and which would have resulted in a more favorable outcome.

*D. Standing*

Woori further maintains that, even assuming Basic and Kwangwon are third party beneficiaries to the 2013 settlement agreement, they did not have standing to bring their motion to enforce settlement because they were not parties to the agreement, and did not learn of it and attempt to enforce it until after it was rescinded. First, as discussed above, the trial court properly concluded, based on substantial evidence, that the 2013 settlement agreement was not rescinded, and this court affirms that determination. Second, EPC joined in the motion to enforce the 2013 settlement agreement, and EPC is a party to the agreement. Even if Basic and Kwangwon did not have standing to enforce the settlement agreement, EPC did, and the ruling granting enforcement is therefore proper as against Woori.

IV

DISPOSITION

The judgment is affirmed.  Respondents are awarded their costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON     

J.

We concur:


McKINSTER     
Acting P. J.


MILLER     
J.